### UNITED STATES v. THOMAS et al.

(District Court, D. West Virginia. April 8, 1893.)

POST OFFICE—OBSTRUCTING MAILS.
Boys who place obstructions on the track of an electric railway whereon the United States mails are carried, and by so doing delay the mail, or force it to be carried in some other way, are guilty of the crime of obstructing the mails, under Rev. St. § 3995.

At Law. Indictment for obstructing the United States mails.

G. C. Sturgiss, U. S. Dist. Atty.
G. W. Attkinson and W. H. H. Flick, for defendants.

JACKSON, District Judge, (orally.)    Gentlemen of the Jury: This case, up to this time, although very brief, has developed a very remarkable state of things in this community,—one that certainly is to be regretted by every one who has any respect for law and order. In a country like ours, where its institutions are based upon the common and free intelligence of the people, especially of the wage-earners, which are supposed to be the foundation of our form of government, it is surprising that people of intelligence should undertake to remodel and reform the obligations that exist between them and their neighbors, or, in other words, to upturn the strata of society. Every man who enters into a contract with his neighbor is under a mutual obligation to his neighbor, and has a reciprocal duty to perform. Contracts are based upon the mutual consent of the parties to the contract, and, if once entered into, the obligation should be held sacred.

Now, just exactly what is involved in this question of the strike here, which has brought about all this trouble, I do not propose to investigate. I do not propose to say which side is in the right, nor which side is in the wrong, or whether in fact either side is in the wrong; but I propose to say to these people in this community that there is but one way to redress a wrong known in this country, and that is in the civil tribunals of the land. No men, no set of men, no communistic combination of men, can lawfully undertake to redress a wrong, except in the way pointed out by law. When you attempt to bind yourselves together for the purpose of redressing a wrong, you strike at the very foundation of our government; you strike at the very foundation of those laws which give you the right of a citizen,—the protection of life, of liberty and the pursuit of happiness. Why don't you think of these things?

Whether the men who have employed you give you too little

wages, or whether the compensation for the service is too small, is not involved in this case. No man or set of men can compel you to work. When you go to a man and enter into his employment, that is a voluntary act on your own part, and, when you enter into an obligation to serve that man for a specific amount, you are bound to do so under the terms of the contract. The moment you enter into it you have reciprocal duties to perform, as well as legal obligations. Now, then, if one side breaks the contract, he has a remedy at law. If he does not pay what he stipulates to pay, the wage-earner has a remedy at law to force him to pay the amount. If he thinks the price is inadequate, the moment that his contract is at an end he has the right to cease the labor; or if he thinks it is inadequate, and there is no fixed time, all he has to do is to give his employer notice of the fact, and quit.

You have no right to go into a strike, and undertake to stop the transportation of the mails of the United States, undertake to stop the running of the cars of the country, or undertake to stop the business which is carried on on the great highways of the country, and which is the mainspring to the success of a country like ours. If all this is done, then you step upon a right which you have no right to interfere with. I make these general remarks on this occasion with a hope that I may reach the ear of the intelligent masses, that they may see at once the error they have fallen into. Rely not upon combinations and strikes to protect your interests. They are disastrous, stopping your mills, and stopping the enterprises and business of the community which furnish the wage-earner the means to support his home. Do not resort to such measures to stop our manufactures, our mills, or the transportation of the mails of the United States, which is so great and important an element of our country for the comfort and welfare of society. If you take this thing up, and look at it, and ponder over it, and see the result that must necessarily follow such a course of action, and the train of circumstances that must necessarily accompany it, you would refuse to enter into these combinations and strikes.

But, coming down to the present case, what is the remedy? Here is the evidence in this case. Ah, it is, as one of the witnesses said on the stand, when he would remonstrate with the people who were obstructing him, and inform them of his position, the boys would reply, "We want to win the strike." Twelve year old boys! I have read of prodigies; I have read the biographies of mere youths, of men like our Hamilton, who took control of the treasury department of this great country when he had barely passed his majority, and brought about such wonderful results. We hear of such cases, but they are exceptional. When you see boys 12 years of age telling the men who are controlling the operations of the railroad through the city that they "want to win the strike," you say it is exceptional. Where did the idea come from? Where else could it come from except from the fireside of the father and mother of the boys? Who put it in the heads of

the boys to assemble there in gangs of 30-odd (for the evidence shows that they sometimes came in gangs of 15, 20, 30, or more) to do this sort of thing? Do you believe these boys conceived the idea? What could be their object? "Train a boy in the way he should go," and, the adage now is, that he will not soon depart from it; and I begin to think there is a good deal in it. Taking one step in the wrong direction may lead to the boy's destruction. The first step taken, the second soon follows, and then the third, and so on to the end; and, when the end comes, bitter, indeed, are the recollections of the parent of the child.

I do not recognize the right of any man to make me work when the compensation is too small. When I was practicing at the bar, and a man employed me, I did the best I possibly could for him, but if he did not pay me he could get others, and if I did not serve him well I would expect him to secure some one else. There are two sides to every question, and there are two to this question. In an experience of 31 long years on the bench I have endeavor to discharge my duties without fear or favor, or respect of person. I have endeavored to discharge those duties as citizen to citizen.

The question involved in this case is in regard to the obstructions placed on the tracks of the Wheeling Railway Company, running through this city to Benwood. The only question to determine is whether these boys placed obstructions on the track, and, if so, whether they caused delay in the transportation of the mails of the United States. If you find from the evidence that this is true, you should unquestionably find them guilty.

In support, the government has offered evidence showing a contract between it and the Wheeling Railway Company for the transportation of the United States mails. The obstructions complained of were created in the vicinity of Benwood. Five witnesses, all of them intelligent men, have identified these boys. Five witnesses identified the larger boy, and four identified the younger one. The first government witness, Geisler, a very intelligent man, when giving his evidence, impresses one with the truth of his statements. He said these boys placed obstructions on the track, and that the obstructions delayed the mails of the United States. The next witness, Weigand, was on the car with Geisler, and corroborates his statements. The next one, Meyers, a motorman, identified both the boys as those placing obstructions on the track. Grayble, the conductor on Meyers' car, identified both. Groves, the mail messenger, rode on the cars frequently, and testified that very often obstructions were placed on the tracks, at times compelling the transportation of the United States mails on other routes. The evidence shows so many obstructions that sometimes the cars had to be abandoned, and that the mails had to be transported on other routes, by way of Martin's Ferry, Bellaire, over the Ohio River Railway, and other routes. Now, then, this is a violation of the statutes imposing a penalty for obstructing the United States mails. The unimpeached testimony of two motormen and two conductors on two different cars shows that

these were the boys who placed obstructions on the tracks, delaying the cars, and hindering the delivery of the mails. On one occasion the trolley, I believe it is called, was thrown out, delaying the car. The first witness said he had been struck repeatedly by stones when removing obstructions.

But, while the boys undoubtedly placed obstructions on the track, some persons older than they are behind them, acting the part of cowards, and do not dare to undertake themselves what they put the boys up to do. They suppose, the boys being mere children, that the courts will not notice what they did. The counsel for the defense has made as strong a case as possible, and has attempted to set up what in law is called an "alibi," to show that the boys were not at the place when the obstructions were placed.

You have heard the evidence, and know whether or not the boys were there. I leave that for you to determine. You know whether they have accounted for all the time necessary to prove an alibi. You have heard the testimony of several lady school teachers. There is a good deal of conflict there, the testimony of those ladies conflicting with that of other witnesses. This you must yourself reconcile. The general remarks I have made have nothing to do with this case as to the boys. I have made them for the benefit of the people in the community, that they may see the error they have fallen into. It is for you to determine, from the evidence you have heard, whether they are guilty. Gentlemen of the jury, you are only to consider the evidence in this case. You have nothing to do with the amount of the penalty to be inflicted, which is only a fine, subject to the discretion of the court. Take the evidence, and decide the case.