court are brought into requisition, and they can be set in motion only by a special application for that purpose. The trustee and committee have full power to arrange, and by. mutual agreement to adjust everything relating to the settlement and winding up of the estate, but they cannot adjudicate or decide any disputed matter. They have no judicial powers. Those are all reserved to the court. A creditor who had proved his debt before proceedings under section 43 were instituted had thereby established his right, prima facie, to participate in the distribution of assets under those proceedings. If in such a case the claim is disputed, the only way the dispute can be adjudicated is by an application to the court to expunge or abate the claim, in which application the trustee must, of course, be the moving party. If a debt which had not been so proven is disputed, the remedy is, of course, the same; but in such a case the creditor must be the moving party, because not having proved his debt in the ordinary way while he had the right to do so, he has not the advantage of the prima facie right to participate which that step confers. In the case last mentioned, the creditor should proceed by petition directly to the court, in which he should set up the fact, nature and consideration of his claim, and pray for leave to prove the same, and for its allowance. If the facts stated in the petition make out a prima facie case, the court will make an order requiring the trustee to answer the same. Upon the coming in of the answer the court will proceed by reference to take proofs, or otherwise, to a final disposition or determination of the matter, as may be deemed expedient. The present case comes within this rule. The petitioner is the proper moving party, but his petition is insufficient in this, the prayer for relief is based alone upon the fact that his claim has been proven under section 22, whereas, as we have seen, the right to so prove his debt had ceased to exist. The exceptions must, therefore, be sustained. The court can see no good reason, however, why the petitioner may not be allowed to reform his petition so as to conform to the foregoing decision, and he will be accorded that privilege.

I have examined carefully the only two reported decisions upon the question discussed in this opinion, viz.: In re Darby [Case No. 3,570], and In re Bakewell [Id. 788]. These opinions are in direct conflict with each other. It will be seen that I agree in the main with the views of Treat, J., in the first-named case, and of course fail to concur in the views of McCandless, J., in his approval of the opinion of Register Harper, in the last-named case. An order must be made in this matter (1) sustaining the exceptions to the petition: (2) granting the petitioner leave to amend his petition by omitting therefrom the allegation of proof of his claim before the register, and inserting in lieu thereof a statement of the fact, amount, nature and consideration of the debt claimed, and so changing the prayer as to conform the same to such amendment; (3) that such amended petition be filed and a copy thereof served on Mr. G. V. N. Lothrop, of counsel for John I. Donaldson, trustee in this matter, within thirty days from this date; (4) that the said trustee answer the amended petition within thirty days after the copy of the same shall have been served as above required.

---

TROWBRIDGE (SCHMITT v.). See Case No. 12,468.

TROWBRIDGE, The HENRY. See Case No. 6,379.

---

## Case No. 14,192.

### The TROY.

[4 Blatchf. 355.] 1

Circuit Court, S. D. New York. Sept. 20, 1859.

ADMIRALTY — JURISDICTION — SERVICE OF VESSEL WHOLLY WITHIN STATE.

The district court has no jurisdiction to enforce, in a suit in rem, in admiralty, a claim for materials and labor, for the repair of a steamboat engaged in running upon waters wholly within the limits of the state of New York.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, against the steamboat Troy, to recover for materials supplied to and work done upon that vessel, in July, 1857. The Troy was engaged in running upon the Hudson river, between the port of Troy and the port of New York, touching at intermediate places, exclusively within the state of New York.

Richard H. Huntley, for libelants.
Welcome R. Beebe. for claimants.

NELSON, Circuit Justice. The question involved in this case is, whether the court below had jurisdiction of the libel. In the case of Allen v. Newberry, 21 How. [62 U. S.] 244, the supreme court held, that the district court for Wisconsin had no jurisdiction over a contract of affreightment of goods between the port of Two Rivers and the port of Milwaukee, both being within the same state, because the contract related to the purely internal commerce of the state, which was not within the cognizance of the admiralty. And, again, at the same term, in the case of Maguire v. Card, Id. 248. it was held, that the district court for California had no jurisdiction over a contract for supplies furnished to the Goliah. a steamboat engaged in the business of navigation and trade on the Sacramento river, between ports exclusively with-

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

in the state of California. The court regarded that case as governed by the principle decided in Allen v. Newberry. The case of Maguire v. Card comes fully up to the one in hand. The principle is, that a contract arising out of the trade and navigation of a vessel engaged in the purely internal commerce of a state, is governed by state laws, and belongs exclusively to state cognizance. In the case of The Goliah, the supplies furnished were coal. In the present case, they are materials and labor for the repair of the vessel.

I make no question under the local law giving a lien in the case, for the suit was commenced before the rule was made refusing any longer to recognize and enforce such a lien in the admiralty. That rule did not take effect till May 1, 1859. All suits commenced previous to that time were saved.

I must, therefore, for the reason given, reverse the decree of the court below, for want of jurisdiction in that court, and dismiss the libel.

---

## Case No. 14,193.

### The TROY.

[Blatchf. Pr. Cas. 246] [1]

District Court, S. D. New York. Oct., 1862.

PRIZE—ILLEGAL TRADE—VIOLATION OF BLOCKADE.

Vessel and cargo condemned as enemy property, attempted to be used in trade by their owner for the benefit of the enemy, and arrested in the act of violating the blockade.

In admiralty.

BETTS, District Judge. This schooner and cargo were seized August 13, 1862, by the United States steamer Kensington, in the Gulf of Mexico, off Sabine Pass, as prize. The crew escaped from the vessel after capture, and could not be sent in as witnesses. The vessel was found to be unseaworthy, and was taken to the Southwest Pass of the Mississippi river, and there left by the captors in charge of the United States authorities. The cargo was shipped to this port for adjudication. On its arrival here, it being made to appear, by the deposition of Robert Barstow, an acting master's mate in the United States navy, that five persons had been found on board of the prize vessel at the time of her apprehension, that none of said persons were sent to this port with the prize property, nor was either of them then here, and that two of them were then in the state of Louisiana, and the other somewhere on the coast of Texas, the court, on motion of the United States attorney, ordered the testimony of Barstow to be taken before the prize commissioners in preparatorio, to be read on the trial, subject to all legal objections. On the 1st of October, 1862, a libel was filed against the captured property. On the 21st of the same month the monition issued thereon was returned to the court by the marshal, with no-

tice of the attachment of the cargo, and, on due proclamation, an order for judgment by default was rendered against all parties in interest not appearing in the suit. No one appearing as claimant in the cause, the United States attorney submitted to the court the preparatory proofs and papers, and prayed judgment.

The vessel was enrolled and registered in the Confederate port of Sabine, Texas, July 3, 1862, to J. D. Kirkpatrick, on his oath that he was owner of her and a citizen of the Confederate States. A bill of sale, dated June 4, 1862, from Wiliam Nelson, of Beaumont, Texas, to the said J. D. Kirkpatrick, conveying to the latter the said vessel for the consideration of $900, accompanies the register. There are, also, a manifest of the lading of sixty-five bales of cotton, given at the port of Sabine, August 4, 1862, for Belize or Campeachy; a letter from the owner, Kirkpatrick, dated July 19, 1892, stating the crew and the lading of the vessel, and naming her place of destination as to some port in Honduras Bay or the West India Islands for the sale of her cargo, and her return back to Sabine Pass, or near there, with goods necessary "for our government"; a Rebel passport to the vessel, dated July 19, 1862, to leave Sabine Pass with her cargo; and a permission granted to Kirkpatrick and two others, June 13, 1862, by the provost marshal of Beaumont, Jefferson county, Texas, to visit Vermilion, but not to communicate any facts injurious to the Confederate States. The only witness examined in preparatorio was Mr. Barstow. He proves the capture at the time and place above mentioned, and the facts of the taking possession of the vessel and the transshipment of the cargo to this port, as before stated. Kirkpatrick claimed, on board of the vessel, at the time of her capture, that he owned the vessel and cargo. She was attempting to sail out of Sabine when captured. That port was then under blockade.

These facts are made to appear upon the vessel's papers: (1) She was endeavoring to evade a blockaded port; (2) both vessel and cargo were enemy property, water borne; (3) the cargo was destined to be traded off, in some foreign port, for goods necessary to the use of the Rebel government; and (4) the testimony proves that the avowed and registered owner of the vessel and cargo was on the vessel when the capture was made and the attempt to violate the blockade was in actual execution. This was an act in face of the actual blockade, which is sufficient to stamp the endeavor with culpability, independent of the knowledge of the existence of the blockade by the owner of the prize property, to be implied from its notoriety and from his residence at the place blockaded. A decree is accordingly rendered condemning the prize as enemy property, attempted to be used in trade by its owner for the benefit of the enemy, and arrested in the act of violating the blockade.

---

[1] [Reported by Samuel Blatchford, Esq.]