## The United States *v.* Farrington.

### Same *v.* Leake.

### Same *v.* Richards.

*(District Court, N. D. New York.* ———, 1881.)

1. CRIMINAL OFFENCE—PRELIMINARY INVESTIGATION—DUTY OF COURT. "It is the duty of the court, in the control of its proceedings, to see to it that no person shall be subjected to the expense, vexation, and contumely of a trial for a criminal offence unless the charge has been investigated and a reasonable foundation shown for an indictment or information. It is due also to the government to require, before the trial of an accused person, a fair preliminary investigation of the charges against him."

2. GRAND JURY—EVIDENCE OF THEIR PROCEEDINGS.—Therefore, whenever it becomes necessary to the protection of public or private rights, any person may disclose in evidence what transpired before a grand jury.

3. SAME—EVIDENCE OF ACTION OF INDIVIDUAL JURORS.—It will not, however, subserve any of the purposes of justice to disclose how individual jurors voted, or what they said during their investigations; and these facts cannot therefore be shown in evidence.

4. SAME—INDICTMENT—INCOMPETENT EVIDENCE—PREJUDICE—REVIEW OF INVESTIGATIONS.—"It is not the province of the court to sit in review of the investigations of a grand jury as upon the review of a trial when error is alleged; but in extreme cases, when the court can see that the finding of a grand jury is based upon such utterly insufficient evidence, or such palpably incompetent evidence, as to indicate that the indictment resulted from prejudice, or was found in wilful disregard of the rights of the accused, the court should interfere and quash the indictment."—[ED.

Motion to Quash Several Indictments.

WALLACE, D. J.   The motions to quash these indictments may properly be considered together.   The defendants are indicted severally for offences under section 5209 of the Revised Statutes of the United States.   The defendants Leake and Farrington are charged with abstracting, embezzling, and misappropriating funds of the First National Bank of Saratoga, and making false entries on the books of the bank, they being officers of the bank.   The defendant Richards is charged with similar offences as to the funds and books of

the Commercial National Bank of Saratoga. The three cases were heard and considered at the same time by the grand jury. The indictments are voluminous, one containing 30 counts, one 22 counts, and one 17 counts. They were not prepared by the law officers of the government, but by an attorney who is presumed to represent creditors of the banks. This attorney instituted proceedings before a commissioner against two of the defendants, and an examination was pending, but not concluded, when he was permitted to present the cases to the grand jury. This attorney appeared as a witness before the grand jury with a number of the bank books, with various exhibits, originals, and copies, and read from these such selections as he chose. He also read to the grand jury the minutes of testimony taken by the commissioner, including the testimony of the defendant Leake, who was examined before the commissioner, compulsorily, as a witness against the defendant Farrington. His testimony was interspersed with comments upon the force and effect of the testimony, entries, and exhibits, in the nature of an argument, which was, in the language of the district attorney, "animated, spirited, and excited." All the cases were heard and considered together, and the grand jury were told that, unless indictments were then found, the offences would be barred by the statute of limitations. The district attorney advised the jury that the minutes of testimony taken before the commissioner were not competent evidence, and that the testimony of the defendant Leake was not admissible against himself, because he was protected against it by statute. He was thereupon asked by the jury whether, if improper testimony was used to obtain an indictment, that would preclude the use of competent evidence upon the trial. The indictments were not read to the jury, or the substance of the various counts explained; but indictments were found as to all the persons implicated. No officer, stockholder, or employe, or depositor of the First National Bank, was a witness. The president of the Commercial National Bank was a witness, but no other person connected with that bank was produced. It is not claimed that he testified to any acts of embezzlement,

but he identified books and vouchers of his bank, and his testimony tended to show irregularities which might be imputed to the defendant Richards. If the case against Richards stood alone, it could not be said that, as to him, there was not sufficient evidence to authorize an indictment.

This summary of the proceedings before the grand jury is sufficient to indicate that they were such as to seriously endanger, if not to preclude, an intelligent and fair consideration of the charges preferred against the accused. It is the duty of the court, in the control of its proceedings, to see to it that no person shall be subjected to the expense, vexation, and contumely of a trial for a criminal offence unless the charge has been investigated and a reasonable foundation shown for an indictment or information. It is due also to the government to require, before the trial of an accused person, a fair preliminary investigation of the charges against him. The cases are frequent when, after all these precautions have been observed, it appears upon the trial that the government has been subjected to discredit and expense which might have been avoided if there had been a more careful preliminary investigation.

Notwithstanding the reasons which exist for insisting upon a rigid adherence to this practice, in the interests of decorum, economy, and justice, it has been zealously maintained that so confidential and sacred should the proceedings of a grand jury be considered that every avenue should be closed which may lead to a scrutiny of their transactions. Accordingly, ancient precedents have been enforced, and even extended, in modern cases, for the purpose of preventing any inquiry into the proceedings of the grand jury, and many authorities are cited to the effect that not only is it not permissible to show any irregularity or misconduct in their proceedings, by the testimony of any juror, but also that the lips of witnesses who appeared before them are to be sealed, and that no person whose duty it may have been to be present shall be heard to impeach or impugn the propriety and regularity of their proceedings.

In one of these cases it was held by a court entitled to great

respect that when a grand jury has caused several persons accused of crime to be summoned before them and examined as witnesses, and had thereupon found indictments against them, and a motion was made to quash the indictments, the affidavits of the accused would not be received to show the facts, because public policy would not permit the transaction before a grand jury to be disclosed, (*U. S.* v. *Brown*, 1 Sawyer, 531;) and thus, although the grand jury had trampled upon the constitutional right of the accused not to be compelled to be a witness against himself, the court refused to entertain an inquiry to ascertain whether, without this flagrant violation of privilege, there was any evidence to warrant the finding an indictment. ·

Other authorities, however, are found which have adopted more liberal and as it seems to me more sensible views, and assert the right and duty of the court to exercise a salutary supervision over the proceedings of a grand jury. It is only practicable to do this by removing the veil of secrecy whenever evidence of what has transpired before them becomes necessary to protect public or private rights. Thus, in *Low's Case*, 4 Greenl. 439, the grand jurors were permitted to testify that they acted under the mistaken impression that it was sufficient if a majority of the jurors concurred in finding a bill and twelve had not concurred. In *U. S.* v. *Cooledge*, 2 Gall. 363, Judge Story received the affidavit of a witness to prove that he was not in fact sworn when examined before the grand jury, saying: "It is of the highest importance that the institution be preserved in its purity, and that no citizen be tried until he has been regularly accused by the proper tribunal." These cases arose upon motion to quash the indictment.

In *Burdick* v. *Hunt*, 43 Ind. 381, it is said there is no sufficient reason why the prosecuting attorney may not be called upon in a court of justice to disclose any evidence given or proceedings had before a grand jury. And the following authorities are to the effect that generally the evidence of grand jurors is competent whenever it is necessary to ascertain who was the prosecutor: *Sikes* v. *Dunbar*, 2 Wheat. Sel. N. P.

1091; *Hindekoper* v. *Cotton*, 3 Watts, 56; or what was the issue and what the testimony of witnesses before a grand jury in a given case: *Thomas* v. *Commonwealth*, 2 Robinson, (Va.) 795; *State* v. *Offutt*, 4 Blatchf. 355; *State* v. *Fassett*, 16 Conn. 457; *Commonwealth* v. *Hill*, 11 Cush. 137; *State* v. *Broughton*, 7 Iredell, 96; *Way* v. *Butterworth*, 106 Mass. 75; *Burdick* v. *Hunt*, 43 Ind. 381.

The rule which may be adduced from the authorities, and which seems most consistent with the policy of the law, is that whenever it becomes essential to ascertain what has transpired before a grand jury it may be shown, no matter by whom; and the only limitation is that it may not be shown how the individual jurors voted or what they said during their investigations, (*The People* v. *Shattuck*, 6 Abb. N. C. 34; *Commonwealth* v. *Mead*, 12 Gray, 167,) because this cannot serve any of the purposes of justice.

It would be difficult to find a case which more forcibly illustrates the good sense and justice of the rule which permits a free disclosure than the present. It is patent that the grand jury permitted themselves to be influenced by the appeals and arguments of a zealous advocate, by hearsay testimony, and by testimony which the law prohibits, although they were advised to the contrary by the district attorney; and it seems much more probable that they were led to their conclusions by prejudice and undue zeal than by calm and fair deliberation. If there was evidence which authorized an indictment, it was so blended with and obscured by the mass of hearsay and otherwise incompetent testimony that it was impossible for the jury to distinguish it; and it would be expecting too much of a body, untrained in judicial investigation, to believe that they could discriminate intelligently between the competent and the incompetent evidence, so as to accord due weight to the former and be uninfluenced by the latter.

It is not intended to suggest that whenever incompetent testimony is received by a grand jury its reception is such error or irregularity as to vitiate their finding, nor to hold that the evidence upon which an indictment is found shall

be such as the court would regard as making out a *prima facie* case against the accused. It is not the province of the court to sit in review of the investigations of a grand jury as upon the review of a trial when error is alleged; but in extreme cases, when the court can see that the finding of a grand jury is based upon such utterly insufficient evidence, or such palpably incompetent evidence, as to indicate that the indictment resulted from prejudice, or was found in wilful disregard of the rights of the accused, the court should interfere and quash the indictment. Very respectable authorities intimate than an indictment should be quashed when it appears that it was found by the grand jury without adequate evidence to support it, or when the grand jury permitted the rules of evidence to be violated, (*Dodd's Case,* 1 Leach, C. L. 184; *People* v. *Ristenblatt,* 1 Abb. Pr. 268;) but if this were permitted it would result that the court would become the tribunal to indict as well as the tribunal to try the accused.

In *State* v. *Froiseth,* 16 Minn. 298, it was conceded by the attorney general, and the court concurred, that where the grand jury required an accused person to be brought before them and testify touching the accusation the indictment should be set aside, although in that case the indictment was not found solely upon the testimony of the accused. In *The People* v. *Briggs,* Albany County Oyer and Terminer, *Osborne,* J., (MS.,) held that an indictment should be quashed where the defendant's wife was called as a witness against him by the grand jury, for the reason that this was a substantial error, and it was doubtful whether the grand jury would have found an indictment without the wife's testimony. These authorities are in point here.

The motions to quash the indictments are granted.