## McKINNEY v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 22, 1912.)

No. 3,515.

1. INDICTMENT AND INFORMATION (§ 140*)—MOTION TO QUASH—SUFFICIENCY AND COMPETENCY OF EVIDENCE BEFORE GRAND JURY.

Unless in extreme instances to prevent clear injustice, or an abuse of judicial process, a defendant against whom an indictment has been returned cannot require the court to review the evidence before the grand jury to determine its sufficiency or whether incompetent evidence was received.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 474, 475; Dec. Dig. § 140.*]

2. Post Office (§ 49*)—Prosecution for Using Mails to Defraud—Sufficiency of Evidence.

Evidence *held* sufficient to sustain a judgment of conviction for using the mails to defraud.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec. Dig. § 49.*

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

3. Grand Jury (§ 2½*)—Competency of Jurors—District from Which Drawn.

It is no objection to the legality of the constitution of a federal grand jury that it was drawn from a district including, but larger in area than, the district as it was constituted at the time the offense was committed.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 2; Dec. Dig. § 2½.*]

4. Grand Jury (§ 42*)—"Presentment."

A "presentment" is an accusation made by grand jurors upon personal knowledge or observation of the facts instead of upon the testimony of witnesses.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 88; Dec. Dig. § 42.*

For other definitions, see Words and Phrases, vol. 6, pp. 5531, 5532.]

Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Oklahoma.

Criminal prosecution by the United States against Richard P. McKinney. Judgment of conviction, and defendant brings error. Affirmed.

J. E. Whitehead, for plaintiff in error.

William J. Gregg, U. S. Atty., and Frank Lee, Asst. U. S. Atty.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. McKinney, who was convicted of using the mails in aid of a scheme to defraud (section 5480, Rev. St. [U. S. Comp. St. 1901, p. 3696]), seeks a reversal because his motion to quash the indictment was overruled and also because, as he says, the evidence at the trial was insufficient.

[1] His motion to quash, which we will assume was a proper form of remedy, stated that the grand jury found the indictment solely upon hearsay and incompetent evidence. To support the motion he offered to prove:

"That the said indictment was found by the said grand jury upon the evidence of F. M. Trout, post office inspector, and upon an examination of the letters, and other documents afterwards introduced at the trial of the case, and copied in this bill of exceptions and marked as exhibits herein, which letters and documents were before the grand jury as evidence, and that no other witnesses or evidence was introduced at the hearing of said case before the said grand jury, that the said F. M. Trout, post office inspector, did not testify positively to any facts except that he had investigated the case, talked to the witnesses and to the injured party, Mittie Polk, and that the said F. M. Trout only related to the grand jury his

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

conversation to the said witnesses, none of which conversation was in the presence of the defendant or with the defendant."

The offer of proof was denied by the court. It is manifest that the proof tendered was not as broad as the ground of the motion. The authorship of the letters claimed to have been written by the accused and the genuineness and significance of the other documents were not denied. Even the complaint of the testimony of the post office inspector before the grand jury was partly, if not entirely, that it was not positive. So at the most the contention is substantially that part of the evidence received by the grand jury was incompetent, and all of it in its entirety was legally insufficient for an indictment.

Some courts have held rather broadly that it is proper for a trial court to go behind an indictment and inquire into the character of the evidence upon which the grand jury acted. United States v. Farrington (D. C.) 5 Fed. 343; United States v. Kilpatrick (D. C.) 16 Fed. 765; Royce v. Oklahoma, 5 Okl. 61, 47 Pac. 1083. Other courts have taken the contrary view. United States v. Reed, 2 Blatchf. 435, Fed. Cas. No. 16,134; United States v. Brown, 1 Sawy. 531, Fed. Cas. No. 14,671; United States v. Terry (D. C.) 14 Sawy. 49, 39 Fed. 355; United States v. Jones (D. C.) 69 Fed. 973; United States v. Cobban (C. C.) 127 Fed. 713. We think the latter is the better rule, though doubtless in extreme instances a court may do what is needful to prevent clear injustice or an abuse of judicial process. This qualification, however, is far from a recognition of the right of a defendant to compel a review of the evidence upon which he was indicted. In United States v. Farrington, supra, relied on by the accused, it was said:

"It is not intended to suggest that whenever incompetent testimony is received by a grand jury its reception is such error or irregularity as to vitiate their finding nor to hold that the evidence upon which an indictment is found shall be such as the court would regard as making out a prima facie case against the accused. It is not the province of the court to sit in review of the investigations of a grand jury as upon the review of a trial when error is alleged; but in extreme cases, when the court can see that the finding of a grand jury is based upon such utterly insufficient evidence, or such palpably incompetent evidence, as to indicate that the indictment resulted from prejudice, or was found in willful disregard of the rights of the accused, the court should interfere and quash the indictment."

In United States v. Reed, supra, Mr. Justice Nelson said:

"No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof, or whether there was a deficiency in respect to any part of the complaint; and the grounds and reasons which we have briefly alluded to account sufficiently for the absence of any such precedent."

In some states the local practice is affected by statutes and forms no guide to that which obtains in the courts of the United States where the common-law rule prevails.

The constitutional requirement of a presentment or indictment by a grand jury (fifth amendment) does not imply that the proceedings of such a body when lawfully constituted shall be subjected to a re-

view by the trial court at the instance of the accused. Matters affecting the state or integrity of a grand jury as an inquiring and accusing instrumentality, such as the number and qualifications of its members, are proper subjects of investigation; but to go further and hold that its internal proceedings must whenever challenged undergo a judicial scrutiny and test according to the rules of trial evidence is but to place another needless, impeding obstacle in the course of criminal procedure. Holt v. United States, 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138. Grand jurors are generally summoned from the nonprofessional walks of life, their investigations and deliberations are not under the direct and immediate guidance of a judicial officer, and they are rarely informed, much less skilled, in the niceties of legal rules. It would be illogical to test their proceedings by unfamiliar standards. Perhaps in actual practice they seek and receive any evidence which tends to show to their injudicial minds the probability of the commission of a crime and the identity of the perpetrator; but confidence must be reposed somewhere, and public policy requires the presumption that they proceed upon sufficient cause in the formulation of a charge. Their selection is governed by law, they act under the sanction of an oath, and their functions are merely preliminary.

[4] If a trial court must review the investigation of the grand jury to determine whether it received incompetent evidence, it would seem naturally to follow that all the evidence received by such a body must be brought before the court and weighed to determine its legal sufficiency. Under the Constitution a criminal prosecution may be upon either a presentment or an indictment. A "presentment" is an accusation made by the grand jurors upon personal knowledge or observation of the facts instead of upon the testimony of witnesses. Reg. v. Russell, 41 E. C. L. 139; State v. Skinner, 34 Kan. 256, 8 Pac. 420. The summoning of the grand jurors before the trial court and an examination of them as to the source, character, and extent of their knowledge, would certainly be a novel proceeding, but a necessary one if the principle of the contention now made were sustained.

It is suggested that an indictment upon incompetent evidence violates the clause of the fifth amendment, which provides that no one "shall be deprived of life, liberty or property without due process of law." The suggestion involves a misconception of the scope and meaning of the due process clause. In Hurtado v. California, 110 U. S. 516, 4 Sup. Ct. 111, 292, 28 L. Ed. 232, in speaking of the fifth amendment the court said:

"The natural and obvious inference is, that in the sense of the Constitution 'due process of law' was not meant or intended to include, ex vi termini, the institution and procedure of a grand jury in any case."

And it applied the same construction to the like clause of the fourteenth amendment limiting the powers of the states. Due process of law within the meaning of the Constitution does not even embrace such an important safeguard as exemption from compulsory self-incrimination (Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53

L. Ed. 97), much less mere rules of procedure like those pertaining to evidence before grand juries.

There is an unfortunate tendency in criminal jurisprudence to raise minor matters to the dignity of substantial rights. The plain safeguards against governmental and private oppression have become by judicial action so embedded in nonessential additions and technical refinements that their true limitations are not always clear, and it not infrequently happens that criminal trials become mere adroit contests in which substance yields to form and the search for truth is diverted to and ends in collateral inquiries. Many an intelligent person accused of crime has been discharged for reasons so abstruse as to be beyond his comprehension, and the triumph has been not of innocence but of ingenious subtlety. Of course fundamental safeguards should not be frittered away, but the growth of judicial construction should also be with due regard to the just rights of society and the practical conduct of trials.

[2] The evidence at the trial was sufficient to convict. It showed the accused contrived a scheme to defraud a woman whom he had promised to marry by working upon her love and anxiety for his welfare, and, by false representations of his critical illness in letters written by him and sent through the mails, to obtain from her remittances of money; that, having contrived the scheme, he used the mails in effecting it. His letters contained representations of great physical agony and distress, of the necessity of a surgical operation to save his life, of the performance of the operation, and of his continued illness, interspersed with repeated importunities for money and "more money." There was undisputed testimony that for a considerable period while his efforts were being made he was well and was walking about the streets.

[3] There is no merit in the objection made in the motion to quash that the grand jury was illegally constituted because it was drawn from a larger district than that in which the crime was committed. The crime was committed in the Southern judicial district of the Indian Territory before the statehood of Oklahoma. The grand jury was drawn after statehood from the body of the Eastern district of Oklahoma, which, though including the prior territorial district, was of much greater area.

The judgment is affirmed.

SANBORN, Circuit Judge (dissenting). In my opinion the judgment below ought to be reversed because it was fatal error for the trial court to refuse to receive the evidence offered by McKinney that there was no legal evidence, that there was nothing but hearsay before the grand jury in support of the charge in the indictment they found, and because, as it seems to me, there was no substantial evidence before the petit jury of his guilt, no evidence inconsistent with his innocence.

I am unable to bring my mind to assent to the view of the majority that the defendant did not offer to prove that there was no legal evidence before the grand jury in support of the charge in the indict-

ment. That charge was that McKinney, who was engaged to be married to Mrs. Mittie Polk, devised a fraudulent scheme to be effected by opening correspondence through the post office, that pursuant to that scheme he mailed a letter to her on June 24, 1906, wherein he wrote that he was very sick, that he was very near dying the night before, that he was fixing for an operation, that the doctors would begin their work late that night, that he paid them all the money he had, and that he needed $45, "when in truth and in fact," reads the indictment, "he was not at said time in distress as stated in said letter and was not absolutely compelled to.have said money to alleviate distress and to procure necessaries as stated by him, and did not intend to return to the said Mittie. Polk the said sum of $45 requested by him in the said letter, and the same was sent with the intention of him, the said Richard P. McKinney, to defraud the said Mittie Polk of the said sum of $45." McKinney moved to quash the indictment on the ground that it was "found without any legal proof having been offered before the said grand jury tending to establish the commission of said crime," and in support of his motion he offered to prove:

"That the said indictment was found by the said grand jury upon the evidence of F. M. Trout, post office inspector, and upon an examination of the letters, and other documents afterwards introduced at the trial of the case, and copied in this bill of exceptions and marked as exhibits herein, which letters and documents were before the grand jury as evidence. and that no other witnesses or evidence was introduced at the hearing of said case before the said grand jury, that the said F. M. Trout, post office inspector, did not testify positively to any facts except that he had investigated the case, talked to the witnesses and to the injured party, Mittie Polk, and that the said F. M. Trout only related to the grand jury his conversation to the said witnesses, none of which conversation was in the presence of the defendant or with the defendant."

The letters and other documents in the bill of exceptions mentioned by this offer were letters to Mrs. Polk and receipts for letters from her purporting to have been signed by McKinney and envelopes addressed to Mrs. Polk. But these letters, envelopes, and receipts were not evidence that any of them was ever signed or sent by McKinney, and without proof of that fact they were no evidence of anything against him. Moreover, the offer was to prove that no competent evidence of, that fact, or of any other fact, was ever presented to the grand jury. The offer was to prove: (1) That no witness but Trout was introduced at the hearing of said case before the grand jury, and (2) that Trout testified positively to no facts, except that he had investigated the case and talked to the witnesses, and that he "only related his conversation to the said witnesses, none. of which conversation was in the presence of the defendant, or with the defendant." The charge against the defendant was the use of the mails to defraud Mrs. Polk of $45. The testimony of the post office inspector, Trout, that he investigated the charge, was not. competent evidence that the charge was well founded, and his testimony of his conversations with Mrs. Polk and other witnesses was mere hearsay. This offer of the defendant must be read in the light of the purpose for which it was made, and it must be given a just and fair construction. So read and

so construed it seems to me to be an offer of plenary proof that no competent or legal evidence whatever, nothing but the hearsay testimony of Trout and the unidentified and unproved letters, receipts, and envelopes, were presented to the grand jury in support of the charge in the indictment. Ought this offer to prove that there was no competent or legal evidence submitted to the grand jury to have been received?

This question appears to me to present a grave and pregnant issue, to involve the purity and integrity of procedure before a grand jury, and the very existence of the constitutional guaranties of lawful notice to the accused before his trial of the nature and cause of the accusation against him and of due process of law. It is a serious thing for any man to be indicted for an infamous crime. Whether innocent or guilty he cannot escape the ignominy of the accusation, the dangers of perjury and error at his trial, the torture of suspense and the pains of imprisonment, or the burden of bail. The secrecy of any judicial procedure is a tempting invitation to the malicious, the ambitious, and the reckless to try to use it to benefit themselves and their friends and to punish their enemies. If malicious, ambitious, or over-zealous men, either in or out of office, may with impunity persuade grand juries without any legal evidence, either by hearsay testimony, undue influence, or worse means, to indict whom they will, and there is no way in which the courts may annul such illegal accusations, the grand jury, instead of that protection of "the citizen against unfounded accusation, whether it comes from government or be prompted by partisan passion, or private enmity" (In re Grand Jury, 2 Sawy. 669, Fed. Cas. No. 18,255), which it was primarily designed to provide, may become an engine of oppression and a mockery of justice. These circumstances have prompted a more extended investigation of this subject than would otherwise have been induced.

The fifth article of amendments to the Constitution of the United States declares that:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war, or public danger, * * * nor be deprived of life, liberty or property without due process of law."

And the sixth article provides that:

"In all criminal prosecutions the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation."

In the case at bar the indictment was the only information of the nature and cause of the accusation vouchsafed to the defendant. He has been sentenced to imprisonment in the penitentiary at hard labor for a year and a day and to pay a fine of $100. If, therefore, his indictment was found without legal evidence, and hence in violation of law, and the judgment against him is affirmed and executed, he will be deprived of his liberty and property without due process of law.

There is nothing inconsistent with this conclusion in the decision in Hurtado v. California, 110 U. S. 516, 534, 4 Sup. Ct. 111, 120 (28

L. Ed. 232) nor in the statement from the opinion in that case quoted by the majority that:

"The natural and obvious inferences is that, in the sense of the Constitution, 'due process of law' was not meant or intended to include ex vi termini, the institution and procedure of a grand jury in any case."

The court neither held nor intimated in that case that the trial, conviction, and punishment of a defendant for an infamous crime against the United States without any information of the nature and cause of the accusation against him, except an unlawful indictment found without any legal evidence to sustain it, was not a deprivation of his liberty without due process of law. The truth is that the best protection against trial without a lawful accusation yet devised for one apprehended for a crime is a public examination before a magistrate in the presence of the accused who is entitled to the aid of counsel and the right to the cross-examination of the witnesses against him, before any accusation to be tried is made against him, and after such an examination, an accusation in the form of an information founded upon the evidence at the examination. The Constitution and laws of California had substituted this safeguard for an indictment in the prosecution of offenses against that state, and the decision in Hurtado's Case was merely that a trial, conviction, and punishment on an information based on the evidence taken in such an examination without an indictment did not deprive him of his liberty without due process of law. But the defendant had no opportunity to cross-examine the witnesses against him at a public examination before a magistrate, nor was any information of the charge against him, except that contained in the unlawful indictment vouchsafed to him before his trial. And in the face of the requirement of the sixth amendment that he should enjoy the right to be informed of the nature and cause of the accusation against him and of the prohibition by the fifth amendment of holding him to answer for the crime against the United States, with which he was charged, without a presentment or indictment, it seems to me that it cannot be that his conviction and punishment without any indictment, or what seems still worse, upon an unlawful indictment, an indictment found without any legal evidence before the grand jury to sustain it, does not deprive him of his liberty without due process of law.

There are some legal propositions so firmly established that they are no longer debatable. One is that while a grand jury in exceptional cases may find an indictment from their own observation it must in such cases be based on that which the jurors personally see or know, or that which some of them see or know and testify to their associates to the exclusion of all rumors, reports, suspicions, and hearsay. Mr. Justice Field, 2 Sawy. 667, 672, Fed. Cas. No. 18,255; Hale v. Henkel, 201 U. S. 43, 63, 26 Sup. Ct. 370, 50 L. Ed. 652. Another is that a grand jury may lawfully receive and hear only legal evidence to the exclusion of mere reports, suspicions, and hearsay. Hearsay evidence is no more admissible before a grand jury than before a court. Mr. Justice Field, 2 Sawy. 667, 672, Fed. Cas. No. 18,255; Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652;

Judge Morrow, In re Grand Jury (D. C.) 62 Fed. 840, 846; United States v. Kilpatrick (D. C.) 16 Fed. 765, 771; Sparrenberger v. State, 53 Ala. 481, 485, 25 Am. Rep. 643.

There is, it is true, a conflict of authority over the question whether or not, when substantial legal evidence and some illegal evidence have been presented to a grand jury in support of an indictment, a court should examine the evidence before the grand jury and quash the indictment on account of the insufficiency of the competent evidence, or the admission of the incompetent evidence. United States v. Farrington (D. C.) 5 Fed. 343, 347; People v. Sellick, 4 N. Y. Cr. R. 329; United States v. Brown, 1 Sawy. 531, Fed. Cas. No. 14,671. But for the reasons which have been already stated, that question is not in my opinion in this case. The question here is whether or not, upon a motion to quash an indictment on the ground that no substantial legal evidence was presented to the grand jury in support of it, it is the legal duty of the trial court to receive evidence to sustain the charge, and, if this evidence supports it, to quash the indictment. The former question presents an issue of fact, the sufficiency of the legal evidence presented to sustain the finding, the latter, a question of law, for in every judicial and quasijudicial tribunal the question whether or not at the close of a hearing or trial there is any substantial evidence to sustain a charge or a finding of fact is a question of law. Howe v. Parker, 190 Fed. 738, 746, 111 C. C. A. 466, and the cases there cited. And upon this latter issue an examination of the authorities and a thoughtful consideration of the reasons controlling it have convinced that there is and ought to be no substantial conflict in the decisions and that the settled and just rule of law upon this subject is: Whenever, on a motion to quash an indictment on the ground that there was no legal evidence before the grand jury to sustain it, the moving party offers to prove his charge, it is the legal duty of the court to go behind the indictment, to receive proof of the evidence before the grand jury, and, if that proof sustains the charge, to quash the indictment. United States v. Coolidge, 2 Gall. 364, 25 Fed. Cas. 662, 663, No. 14,858; People v. Restenblatt, 1 Abb. Prac. (N. Y.) 268, 271, 272; Royce v. Territory, 5 Okl. 61, 47 Pac. 1083; State v. Cain, 8 N. C. 352; State v. Fellows, 3 N. C. 340; People v. Clark (O. & T.) 14 N. Y. Supp. 642; People v. Brickner (O. & T.) 15 N. Y. Supp. 528, 529; People v. Briggs, 60 How. Prac. (N. Y.) 17, 29; People v. Sellick, 4 N. Y. Cr. R. 329; People v. Price (Sess.) 2 N. Y. Supp. 414; People v. Vaughan, 19 Misc. Rep. 298, 299, 42 N. Y. Supp. 959; People v. Moore, 65 How. Prac. (N. Y.) 177; People v. Haines (Gen. Sess.) 1 N. Y. Supp. 55; Boone v. People, 148 Ill. 440, 36 N. E. 99; Sparrenberger v. State, 53 Ala. 481, 485, 25 Am. Rep. 643; State v. Logan, 1 Nev. 509; State v. Grady, 84 Mo. 220, 222; State v. Cole, 145 Mo. 672, 47 S. W. 895; United States v. Farrington (D. C.) 5 Fed. 343; United States v. Kilpatrick (D. C.) 16 Fed. 765, 774; United States v. Edgerton (D. C.) 80 Fed. 374; United States v. Rosenthal (C. C.) 121 Fed. 862, 873; Chadwick v. United States, 141 Fed. 225, 235, 72 C. C. A. 343.

The grand jury is the organ of the court, subject to its jurisdiction and direction, and it is one of the legal duties of the court to see that its acts and findings accord with and are not in violation of the Constitution and the law. The Constitution and the law are superior to the theoretical secrecy of the proceedings of the grand jury, and courts should never permit the latter to induce, protect, or perpetuate violations of the former, or private or public wrongs.

In United States v. Coolidge, supra, Mr. Justice Story received evidence that one of the witnesses testified before the grand jury without being sworn, quashed the indictment, although there was some legal evidence before the grand jury, and said:

"The grand jury is the great inquest between the government and the citizen. It is of the highest importance that this institution should be preserved in its purity and that no citizen be tried until he has been regularly accused by the proper tribunal. Every indictment is subject to the control of the court, and this indictment having been found irregularly and upon the mere statement of a witness without oath, which was not evidence, a cassetur must be entered."

This and the other federal decisions cited above not only sustain, but go much farther than, the rule that an indictment must be quashed where there is no legal evidence to sustain it, for they quashed indictments where illegal evidence was introduced although there was also legal evidence before the grand jury in support of the indictments.

In Sparrenberger v. State, 53 Ala. 481, 486, 25 Am. Rep. 643, where the claim was that the indictment was found without legal documentary evidence or the testimony of witnesses, the Supreme Court of Alabama said:

"On a motion to quash or to strike from the files, addressed to the court with reasonable diligence after the facts have been discovered, supported by evidence leaving no reasonable doubt on the mind of the court that the indictment was not the finding of 12 of the grand jury, or that it was found without the evidence of witnesses before them, or legal documentary evidence, truth and justice, the preservation of the verity and dignity of its own records, the protection of the citizen and constitutional guaranty demand that the court should expunge the spurious paper. It is not an accusation the citizen should be held to answer; it is without warrant of law."

In People v. Restenblatt, 1 Abb. Prac. (N. Y.) 268, a case in which a motion to quash the indictments on the ground that the testimony before the grand jury contained no legal evidence to sustain them was granted, objection was made that the court could not go behind the indictment, examine the evidence before the grand jury, and quash the indictments. But the court overruled the objection, established in the year 1855 the contrary rule which has ever since obtained in the courts of New York and gave some of the reasons for that rule in these words:

"The ground, as it seems to me, for an interference by the court in cases of this nature, is that the grand jury is wholly without authority to indict, upon the well-settled principle that no jurisdiction by any criminal magistracy can obtain over the subject-matter of a criminal offense, except upon sworn legal testimony before a duly constituted authority; as no jurisdiction can be had of the body of a criminal offender, except by reason of his

personal presence before the power having cognizance of the crime. If this be good law, with all the force of truth and the strength of justice, how may a grand jury indict any one of a crime, having, for want of proof, no jurisdiction of the subject-matter of the offense; or, if they do, why may not a court go behind the record and relieve the accused of preceding imprisonment, with the care, expense, and degradation of a public trial? The answer is, not that there is any law to prevent, but that it has never been done, which, with this court, would be sufficient if justice to the citizen did not otherwise require; but when it is demanded by what are in my judgment the legal rights of the accused, it is no answer, and shall not stay this court from a prudent and careful performance of its duty. It is, in my judgment, quite enough that a grand jury is licensed to act in secret upon ex parte testimony in respect to all matters and persons, without permitting them to indict individuals contrary to the rules of law, and where no crime has been proved. As for instance a witness testifies before the court and jury; a spectator hears a bystander say that the evidence is corruptly false; upon this, the spectator goes before the grand jury now in session, and swears that the witness testified to something which he believes to be utterly false, as a citizen standing hard by said it was so; and upon this an indictment is ordered for perjury. Is there no relief in such a case, save a public trial? Cannot the court, these facts appearing, quash the indictment for insufficiency of proof? If not, why not? The only answer is that there is no authoritative precedent. If not, it is time for one; for, if controlled by nothing else, grand juries should be bound by the rules of evidence; for upon this, more than anything else, depends the citizen's safety."

Upon the importance of the preservation and enforcement of the rule which excludes hearsay as evidence this court said:

"Strike down this rule, and the most sacred rights of person and property rest only upon the whimsical and pernicious gossip of the reckless, the irresponsible, and the vicious. The rule that hearsay is incompetent evidence is essential to the preservation of personal liberty and the rights of property. It should be guarded with jealous care. Its enforcement is not discretionary with the courts, and its violation is fatal error." Board of Com'rs v. Keene Five Cents Savings Bank, 108 Fed. 505, 510, 47 C. C. A. 464, 470, and cases there cited.

In Royce v. Territory, 5 Okl. 61, 47 Pac. 1083, 1086, in the year 1897, 42 years after the rule upon this subject was established in the state of New York, it became the duty of the Supreme Court of Oklahoma to examine the question in issue in this case and to establish the rule for that territory and state. After a careful examination of the authorities and of the reasons which condition this legal issue, it delivered an exhaustive and instructive opinion in which it reversed a judgment of conviction for the error of the court below in refusing to receive and consider proffered testimony that, although there was much incompetent evidence, there was no competent evidence before the grand jury in support of the indictment. That court stated, with what seems to me to be compelling force and logic, the reason for its decision and for the rule, which all the authorities above cited sustain, that on a motion to quash for the absence of all competent evidence before the grand jury it is the duty of the court to receive proof of the evidence before the grand jury and if the evidence sustains the charge to quash the indictment, in these words:

"The importance of the proposition involved may be appreciated when it is considered that the defendant had no other way to have the question

presented to the attention of the court, or considered by it, as, under our statutes, it could not be presented either upon a motion for a new trial or upon a motion in arrest of judgment." (Nor has the defendant in this case any other way to present his question to the federal courts.) "Hence, if it be not substantial error for a trial court to summarily overrule a motion to set aside and quash an indictment, based upon the grounds stated in this motion, and to arbitrarily refuse to comply with the statutes and permit the defendant to produce evidence showing its invalidity, then the constitutional right of one accused of crime may be taken from him, and he may be held to answer to a capital or otherwise infamous crime without a presentment or indictment of a grand jury. The Constitution, in guaranteeing this right to persons accused of crime, did not mean a mere form of indictment, but meant a valid indictment found and presented in accordance with the ancient and just rules and safeguards of law, provided for the organization, action, and conduct of grand juries."

There is no decision in the authorities cited by the majority in conflict with the rule which has been stated and which governs the case at bar. All those authorities concern the question whether or not an indictment which is sustained by some legal evidence may be quashed on account of the insufficiency of that evidence or the presence of incompetent evidence also.

In United States v. Reed, 2 Blatchf. 435, 27 Fed. Cas. 727, 738, 739, No. 16,134, there were two classes of counts in the indictment. Only one class was challenged on the ground that some incompetent evidence was received before the grand jury. But there was also much competent evidence before them to sustain that class of counts and the court denied the motion to quash on the ground that it was not its duty to consider and determine the sufficiency of the competent evidence before the grand jury and that the class of counts not challenged would in any event sustain the indictment.

In United States v. Brown, 1 Sawy. 531, 24 Fed. Cas. 1273, No. 14,671, a motion to quash was made on the ground that the grand jury compelled the defendants to testify before them and received their testimony which was claimed to be incompetent. There was, however, no claim or offer to prove that there was not ample competent evidence before the grand jury to sustain the indictment, and the court denied the motion.

In United States v. Terry (D. C.) 14 Sawy. 49, 39 Fed. 355, 356, a motion was made to quash certain indictments because, after the grand jury had heard 17 witnesses in support of them and the district attorney had drawn the indictments, they were not read to the grand jury before they found them. There was no claim that there was not substantial evidence to sustain them, and the court denied the motion. In the opinion, however, it sustained the rule that the evidence must be considered and the indictments quashed if there was no substantial evidence to sustain them. It said:

"So, again, the general rule that the admissibility and sufficiency of the evidence on which an indictment has been found cannot be inquired into is unquestionable. Yet if, for example, it should appear from the indorsement on the back of the indictment that only one witness was examined and it should be shown that he was a convicted felon, and therefore incompetent to be a witness in any case, I presume that the indictment

would be quashed. It has also been held that in extreme cases, 'when the court can see that the finding of the grand jury is based on such utterly incompetent evidence as to indicate that the indictment resulted from prejudice, or was found in willful disregard of the rights of the accused,' it will interfere and quash the indictment."

In United States v. Jones (D. C.) 69 Fed. 973, 978, a motion to quash an indictment on the ground that some incompetent evidence was introduced before the grand jury was denied. But it was not even asserted that there was not sufficient competent evidence to authorize the finding of an indictment, and the court said that:

"If the grand jury required the accused to appear and compelled him to be sworn and to testify touching the charge against him, the indictment might be set aside. State v. Froiseth, 16 Minn. 296 (Gil. 260). If a witness who was incompetent or disqualified from giving evidence under the law, as for instance, if the wife of the accused testified before the grand jury, the indictment might be quashed."

In United States v. Cobban (C. C.) 127 Fed. 713, 721, 722, a plea in abatement that incompetent evidence was introduced before the grand jury, and that a special assistant district attorney was guilty of unlawful conduct before them, was overruled. But there was no claim made or proof offered that there was not ample competent evidence before the grand jury to sustain the indictment, and the court went behind the indictment, examined the evidence of the testimony and proceedings before the grand jury, and exonerated the special district attorney. And this completes the review of the authorities cited by the majority.

In a study of the books a few sporadic cases have been found, such as State v. Boyd, 2 Hill (S. C.) 288, 27 Am. Dec. 376, decided in 1834; Smith v. State, 61 Miss. 754; State v. Dayton, 23 N. J. Law, 49, 57, 53 Am. Dec. 270, a case which seems to rest on the proposition repudiated by all the federal and all other state authorities, that the grand jury may lawfully hear and indict upon incompetent evidence alone; and Kingsbury v. State, 37 Tex. Cr. R. 259, 39 S. W. 365—in which it has been held that the secrecy of proceedings before the grand jury is more sacred than the constitutional guaranties, that it prevents proof that there was no competent evidence before the grand jury in support of an indictment, and that the guaranties must be disregarded. But these cases are so rare and so far out of accord with the current of modern authority, and the opinions in them are so devoid of reasoning to sustain them, that, as it seems to me, they are negligible and cannot be justly held to raise a conflict over the rule established by the numerous decisions which have been cited. The text-book writers, Rice in volume 3 of his work on Criminal Evidence, at page 410, and Underhill in the second edition of his work on Criminal Evidence, at page 49, one of the latest, if not the latest, work on the subject, which was issued in 1910, so treat this question and declare the established rule to be that an indictment without any competent evidence to support it must be quashed.

The only sound reasons for the secrecy of proceedings before a grand jury are that the grand jurors may not be questioned for

their votes or sayings at their sessions, and that indictments and presentments may not be disclosed before the defendants are arrested, and proof that there was no competent evidence before them impinges upon neither of these reasons, and where the reason of a rule ceases the rule ceases, and ought to cease. Hence the modern and the true rule is that the veil of secrecy may be removed from all the proceedings before the grand jury, except the votes and sayings of the grand jurors whenever such a removal is essential to the enforcement of the constitutional guaranties or to the protection, preservation, or enforcement of public or private rights. United States v. Coolidge, 2 Gall. 364, 25 Fed. Cas. 662, 663, No. 14,858; In re Atwell (D. C.) 140 Fed. 368, 375; United States v. Farrington (D. C.) 5 Fed. 343, 346; Low's Case, 4 Greenl. (Me.) 439, 16 Am. Dec. 271; Burdick v. Hunt, 43 Ind. 381; Sykes v. Dunbar, 2 Wheat. Selwyn, N. P. 1091; State v. Offutt, 4 Blackf. (Ind.) 355; People v. Shattuck, 6 Abb. N. C. 33, 35; Commonwealth v. Mead, 12 Gray (Mass.) 167, 170, 71 Am. Dec. 741; State v. Cain, 8 N. C. 352; State v. Fellows, 3 N. C. 340; Way v. Butterworth, 106 Mass. 75; People v. Clark (O. & T.) 14 N. Y. Supp. 642; People v. Sellick, 4 N. Y. Cr. R. 329; People v. Brickner (O. & T.) 15 N. Y. Supp. 528, 529; State v. Grady, 84 Mo. 220, 223; State v. Logan, 1 Nev. 509; Boone v. People, 148 Ill. 440, 36 N. E. 99; Royce v. Territory, 5 Okl. 61, 47 Pac. 1083.

Mr. Rice in the third volume of his work on Criminal Procedure, on page 409, says:

"The jealousy with which the early law guarded the secrets of the grand jury room has largely disappeared. The sacramental character of that august body is very imperfectly recognized at the present day. The theory that the proceedings before this body are beyond the scrutiny or condemnation of court or counsel is a foolish pretense that is very generally abandoned. Malice, corruption, and ignorance frequently combine to impress upon the proceedings of this body the tyrannical and oppressive functions of the Star Chamber and the Council of Ten. And to say or even intimate that, where corrupt practices exist, there is no method open for their proper disclosure, is simply to insist that our criminal law is crippled with a hideous deformity."

It is said that the fifth amendment does not imply that the proceedings of a grand jury shall be subjected to a review by the trial court at the instance of the accused, and that to hold that its internal proceedings must undergo a judicial scrutiny and test according to the rules of evidence, is but to place another impeding obstacle in the course of criminal procedure. But the fifth amendment prohibits the deprivation of life, liberty, or property without due process of law. An indictment found by a grand jury without any competent evidence to sustain it is found in violation of, and hence without due process of, law. The trial court has the power to direct and supervise the action of the grand jury and to see that no man is placed upon trial until an accusation according to law, as required by the fifth and sixth amendments, is found against him. The judge is required to support the Constitution. There is no way in which these amendments can be supported in a case like this except by hearing the evidence before the grand

jury and quashing the indictment. And therefore it seems to me that these amendments to the Constitution not only imply, but require him, when a motion is made to quash an indictment on the ground that there was no competent evidence before the grand jury to sustain it, to review the proceedings before the grand jury, and if the ground of the motion is sustained by the evidence to quash the indictment. Nor does this rule of law seem to me to interpose any needless or impeding obstacle in the course of criminal procedure. It but supports the guaranties of the fifth and sixth amendments in the only way they can be supported in a case of this character, in the same way that Justice Story and Judge Davis in United States v. Coolidge, in 1815, and the other judges whose decisions have been cited, have since maintained them. It is not the rule, but the constitutional guaranties, that impose the only obstacles to the course of criminal procedure there are here, and the argument against this obstacle seems to me equally potent against every provision of the Constitution protective of the rights of citizens.

It is said that a presentment is an accusation made by grand jurors upon their personal knowledge or observation, and it would be a novel but necessary proceeding to summon grand jurors to testify to the extent and character of their knowledge if the principle of the rule under consideration continues to prevail. But it is well settled that grand jurors may not present on rumors, hearsay, reports, or suspicions, or otherwise than upon their personal knowledge or observation, or that of some of them testified to their associates. And if grand jurors should so disregard their oaths and their duty as to find a presentment without any personal knowledge or observation of any of them, on mere rumors or hearsay, it does not seem to me to be doubtful whether the constitutional guaranties or the secrecy of their proceedings should give way. But that question is not here and may not now be authoritatively decided, and its existence seems to me to be no sound reason for a failure to enforce the rule applicable to the case at bar.

Finally, it is said that there was uncontradicted evidence at the trial that McKinney was guilty of the crime with which he was charged in the indictment. A careful reading of the testimony has led my mind to a different conclusion. But suppose McKinney was guilty and was proved to be so before the petit jury. That is no reason why he should be held to answer for his crime without a lawful indictment, or be deprived of his liberty or property without due process of law. Neither guilty persons nor those subsequently proved to be guilty are excepted from the prohibition and guaranty of the fifth amendment. It does not read no person except guilty persons and those subsequently proved to be guilty shall be held to answer unless on a presentment or indictment. It reads, "No person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment * * * nor be deprived of life, liberty or property without due

process of law," and it vouchsafes the same protection and the same right to the guilty as to the innocent.

Because in a case like this at bar the only way in which the constitutional guaranties of the fifth and sixth amendments, and the rule of law that the grand jury may not indict without some legal evidence to sustain the charge they make, can be preserved and enforced, is for the court to receive the proof offered in support of the charge that no legal evidence was presented to the grand jury in support of the accusation in the indictment and if the evidence supports the charge to quash it, and the court below refused to receive such evidence, it fell into a fatal error in my opinion, and the judgment below should be reversed.

The charge in the indictment was that McKinney, who was engaged to be married to Mrs. Mittie Polk, devised a fraudulent scheme to be effected by opening correspondence with her through the post office of the United States, to make her believe he was in love with her and intended to marry her, and believing that the relations between them were such as would induce her to send him money if claims were made by him that he was in distress and needed it to relieve his suffering, he, on June 24, 1906, used the mails to send her a letter from Ardmore, Ind. T., on that day, wherein he wrote that he was very sick, that he was very near dying the night before, that he was fixing for an operation, that the doctors would begin their work late that night, that he had paid them all the money he had, and that he needed $45, "when in truth and in fact he was not at said time in distress as stated in said letter and was not absolutely compelled to have said money to alleviate distress and to procure necessaries as stated by him, and did not intend to return to the said Mittie Polk the said sum of $45 requested by him in the said letter, and the same was sent with the intention of him, the said Richard P. McKinney, to defraud the said Mittie Polk of the said sum of $45." The averments in quotation are the only allegations in the indictment of the falsity of any representations of McKinney.

There was evidence at the trial that McKinney wrote and sent the letter, that he subsequently wrote and sent other letters consistent with this letter, in which he wrote of the pain and suffering he had endured and was enduring and of his slow recovery. But it seems to me that there was no substantial evidence of the averments in the indictment that on June 24, 1906, he was not in distress, that he was not "absolutely compelled to have the $45 to alleviate distress and to procure necessaries," and that he did not intend to return the $45. The indictment contained no averment that he was not fixing for an operation, or that the doctors would not begin, or that they did not begin and perform, the operation on the evening of June 24, 1906, and the letter contained no representation or promise that McKinney intended to or would return the $45. The result was that the only representations made that were alleged by the indictment to be false were that on the evening of June 24, 1906, he was in distress and needed $45. All the

evidence that is claimed to be in support of these averments was the testimony of witnesses Kessler and Mrs. Raffus. The letter was written from Ardmore in the Indian Territory on June 24, 1906. Kessler testified that he was rooming at the Southern Hotel in South McAlester for about three months prior to August 1, 1906, that he saw McKinney around there in the town of South McAlester about two weeks along in the spring, some time in June or July, that he could not fix the time any nearer than that, that during this time he saw him and talked to him half a dozen times on the street or at the hotel, that "he was, I should judge, apparently well from his looks," but that he could not say of his own knowledge whether or not he had any private ailments or surgical operations: that McKinney did not stay at the Southern Hotel any length of time, and he did not know whether he was rooming there or not.

Mrs. Raffus ran the Southern Hotel at South McAlester during the year 1906. She testified that McKinney never stayed at the Southern Hotel more than one night at a time, that she did not believe she ever spoke more than two words to him, that she knew she did not, that he would just come up and pay his bill and go down the steps, and that was all she had to do, that he was in and out at her place several times, and she did not know whether or not this was in more than one year, that he was there in June and July, 1906, that she was absent from South McAlester from June 19th until in the night of July 4, 1906, that McKinney was not there on June 19th, but that on the morning of July 5th she saw him walking down the hall of the hotel, that she had never seen him before that time, that she saw him but once at that time, that she did not know whether or not he came back that night, that she could not tell how long it was before he returned. To the repeated question of the district attorney whether or not McKinney was sick, her answer was, "No, he wasn't sick at my house," that she knew he was not sick because when she came home on July 4th her husband was there, her son was there, and her housekeeper, and they would have said so, and because she called them up by telephone while she was at Dallas and Ft. Smith, and they said they were all well, that she did not ask or know whether McKinney had been operated upon or had had typhoid fever.

It is an incontrovertible rule of law that it is the duty of the court to instruct the jury to return a verdict for the defendant in a criminal case unless the evidence is incompatible with the innocence of the accused and incapable of explanation on any other reasonable hypothesis than that of his guilt. Vernon v. United States, 146 Fed. 121, 125, 76 C. C. A. 547, 551; United States Fidelity & Guaranty Co. v. Des Moines National Bank, 145 Fed. 273, 279, 74 C. C. A. 553, 559; United States v. McKenzie (D. C.) 35 Fed. 826, 828.

There is nothing in the testimony of these witnesses inconsistent with the truth of the statement of McKinney that he was in distress and in need of money on the evening of June 24, 1906, at

Ardmore. Nay more, there is nothing inconsistent with his statement that he was preparing for an operation, or, for that matter, with the fact that he submitted to an operation and with pain and suffering slowly recovered from it. Take the testimony of Kessler. It is that he saw him in South McAlester for about two weeks in June or July, spoke to him a half dozen times, that he was apparently well, and that he did not know whether he had any private diseases or surgical operations. Kessler might have seen him there apparently well the first two weeks of June or the last two weeks of July, and yet he might have been ill and in need of money at Ardmore on June 24th, and he might have submitted to an operation on that night and slowly recovered. Take the testimony of Mrs. Raffus. She testified that she saw him for the first time in her life on the morning of July 5th going down the hall, that she did not see him again at that time, that she does not know when he returned, that he was never sick at her house so far as she had heard, and that she never spoke two words to him, that he was never at her house more than one night at a time, and she never inquired or knew whether he had been sick or submitted to an operation. There is nothing in all this incompatible with the representations of McKinney that he was sick and in need of money and about to be operated upon at Ardmore on June 24th, when Mrs. Raffus was, as she testifies, at Dallas or at Ft. Smith. Mrs. Raffus was a complete stranger to McKinney on July 5, 1905, and during that summer Kessler was but a chance acquaintance. They were people to whom a young man like McKinney was not likely to tell his secret pains and troubles, and there is nothing in their testimony inconsistent with the truth of his statements to Mrs. Polk. The fact that there was no substantial evidence before the trial jury inconsistent with his innocence is another reason why it seems to me the judgment against him should be reversed.