## Case No. 14,671.

### UNITED STATES v. BROWN et al.

[1 Sawy. 531;[1] 13 Int. Rev. Rec. 126.]

District Court. D. Oregon. March 27, 1871.

INDICTMENT — MOTION TO QUASH — AFFIDAVIT — "DEFENDANTS" — WITNESS — INCRIMINATING TESTIMONY — STATE LAWS.

1. A motion to set aside or quash an indictment will not lie unless the objection appear upon the face of the indictment.

[Cited in U. S. v Terry, 39 Fed. 357.]

2. An affidavit of a defendant that he believed the grand jury acted upon incompetent or insufficient evidence in finding an indictment against him, not allowed on a motion to quash.

[Cited in People v. Lauder, 82 Mich. 121, 46 N. W. 956.]

3. There are no defendants or co-defendants to an inquiry before the grand jury, until the indictment is found and filed in court.

4. Under the act of February 25, 1868 (15 Stat. 37), a person may be compelled in a judicial proceeding to testify to matters tending to criminate himself, but no use can be made of such testimony against the witness in a criminal proceeding.

[Criticised in U. S. v. Farrington, 5 Fed. 346. Cited in U. S. v. McCarthy, 18 Fed. 89; U. S. v. Smith, 47 Fed. 504.]

[Cited in People v. Lauder, 82 Mich. 150, 46 N. W. 956.]

5. The act of July 6, 1862 (12 Stat. 588), only extends the thirty-fourth section of the judiciary act to cases in equity and admiralty, and does not include criminal actions or proceedings.

[Cited in Logan v. U. S., 12 Sup. Ct. 629.]

[This was an indictment against John Brown, Paul Oberhiem, John Gassen, Thomas B. Scott, Samuel Adolph, Henry Heyman. Daniel Wagnon, and Wesley Brown. Heard on motions to quash the indictment.]

John C. Cartwright. for the United States.

Walter W. Thayer and W. Lair Hill, for defendants.

DEADY, District Judge. On March 17, 1871. the grand jury of this court found an indictment against John Brown and seven others for corruptly impeding the due administration of justice, in this court by advising, causing and procuring one Morris Graves, a material witness in a criminal charge against said Brown, pending before said grand jury, to secrete and absent himself, so as to avoid being served with a subpœna, then issued out of this court to require and command the attendance of said witness before said jury. The indictment is found under section 2 of the act of March 2, 1831 (4 Stat. 488). At the foot of the indictment the names of persons are inserted or endorsed as the witnesses examined before the grand jury in accordance with the practice prescribed by

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

the Criminal Code of the state, six of whom appear to be the same persons as six of the defendants in the indictment.

One of the defendants, upon being arraigned, pleaded guilty to the indictment, one of them has not been arrested, and the other six have filed two motions, one by Brown and the other by the other five, to set aside and quash the indictment, which have been argued and submitted together. The motions are substantially the same, and are made upon the following grounds: (1) That the grand jury compelled six of the persons named in the indictment to appear before them and testify against their will, and acted upon the evidence so obtained in finding said indictment. (2) That for the purpose of finding said indictment the grand jury received incompetent testimony, to wit: that of the defendants aforesaid. (3, 4, 5, and 6) That the indictment is not direct and certain as to the crime charged, or as to the necessary circumstances thereof, and that the indictment does not charge a crime nor do the facts stated constitute one.

In support of these motions, counsel for defendants have read the separate affidavits of four of the defendants, Paul Oberheim, John Gassen; Thomas B. Scott, and Samuel Adolph, each of which is substantially to the effect, that affiant appeared before the grand jury which found this indictment in obedience to a subpœna served upon him, and there gave evidence "regarding the charges for the purpose of said indictment," and as affiant believes, said evidence was used by said grand jury upon which to find this indictment against affiant and the other defendants therein.

Under the Code an indictment cannot be attacked by motion except as provided in section 115, which enacts, that it must be set aside on motion of the defendant when it appears that "the same has not been found, endorsed and presented as prescribed in chapter 7," or when the names of the witnesses before the grand jury are not placed upon the indictment. Code Or. 460.

It must be admitted that these motions, styled both motions to set aside and to quash, do not come within the scope of this provision. For aught that appears and indeed from what appears, the indictment was found by the concurrence of the requisite number of grand jurors. The names of the witnesses are endorsed upon it, and it is properly endorsed "A true bill," and signed by the foreman, and was by such foreman, in the presence of the grand jury, duly presented in open court and filed with the clerk as a public record.

As I understand it, the Code does not allow any inquiry by the court as to the sufficiency or competency of the testimony upon which a grand jury has acted in finding an indictment, for the purpose of setting it aside. So at common law, a motion to quash an indictment was only allowed for such insufficiency

in the body or caption of it, as would make a judgment upon it against the defendant erroneous; and even then it was in the discretion of the court either to allow the motion or oblige the defendant to plead or demur. 4 Bac. Abr. 342.

Neither the motion to set aside nor the motion to quash will lie where the objection does not appear or arise upon the face of the indictment, or perhaps the records of the court. This being so, the affidavits of the defendants impugning the conduct and judgment of the grand jury, cannot be considered upon the hearing of this motion. If the contrary practice were established, there would be no need of grand juries, and the court would necessarily assume both the function of indicting and trying criminals; for it is safe to presume that in most cases the defendant would object to being tried upon the indictment, and support such objection by his affidavit that he believed the grand jury acted upon incompetent or insufficient evidence. The wit of man could not devise a mode of indicting which would not be liable to this objection from the defendant. In the administration of criminal justice, confidence must be reposed somewhere; and it must be admitted that there are few bodies concerned in it, that may be more safely trusted than the grand juries of this district. The material allegation of each of these affidavits, that the affiant believes the grand jury acted upon his evidence in finding the indictment against himself and co-defendant, is quite as likely to be false as true, because the affiant has no means of knowing the fact. Nor does it appear that the affiants gave any material testimony in the matter. They do not say that they confessed their guilt, or that of their fellows, before the grand jury. Upon this point I cite and rely upon the opinion of Mr. Justice Nelson in U. S. v. Reed [Case No. 16,-134], and the authorities there cited, in which case a motion to quash upon a similar affidavit of the defendant was denied.

Laying aside, then, the affidavits of the defendants, what objection appears to the manner of finding this indictment upon the face of it? It is answered that, it appears that each of the six defendants whose names appear as witnesses upon the indictment, was a witness against himself and against his co-defendants, and that, therefore, the indictment was found upon incompetent testimony. Is this conclusion from the premises a certain or even a probable one? In the investigation of this matter ten persons appear to have been before the grand jury and examined as witnesses. Upon the testimony of which one of them this indictment was found, as to any or all of the defendants, this court cannot know or presume. There is no presumption that all of them or any particular one of them gave material or any testimony before the grand jury. There had been no preliminary examination before a commissioner concerning the commission of this alleged crime. The investigation originated with the grand jury, as was lawful and proper. In endeavoring to find out who, if any, were probably guilty of impeding the administration of justice by running off and secreting the witness who had failed to appear before them, they might call before them and examine many persons who were ignorant, or affected to be, about the matter, and the testimony of others might establish the fact that some of these same persons were the very ones who should be indicted. For instance, this indictment, for aught that appears, may have been found upon the testimony of the three witnesses not named as defendants therein. But for the sake of the argument let it be assumed that each of these six defendants who were before the grand jury gave material testimony against the other five, would the indictment against these six, or either of them, have been found upon incompetent testimony? I think not. Each of these parties might have been compelled to testify before the grand jury concerning the part, if any, which each of the others took in this alleged criminal transaction.

The argument to the contrary by the counsel for defendant is based upon section 211 of the Code, which enacts that "a defendant in a criminal action or proceeding cannot be a witness for or against himself, nor for or against his co-defendant." Code Or. 477. And also section 48, which declares that, "in the investigation of a charge for the purpose of indictment, the grand jury shall receive no other evidence than such as might be given on the trial of the person charged with the crime in question." Id. 449. And the assumption that these parties were defendants and co-defendants in a criminal action or proceeding before the finding of the indictment, and during the investigation of the matter before the grand jury; and that the inquiry before that body was the investigation of a criminal charge made against each of these particular six defendants.

I cannot conceive of any one being a defendant until some distinct action or proceeding known to the law has been commenced against him, to which he then becomes a party, and in which he is entitled to be heard as soon as he is brought into court or chooses to appear. Section 11 of the Criminal Code provides substantially that a criminal action is commenced when the indictment is found and filed with the clerk. So in U. S. v. Reed, cited above, it was held that while an investigation was going on before the grand jury touching a particular charge, there was no cause pending in court or before that body in the legal sense of the term. There are, in fact or law, no defendants or co-defendants to an investigation before a grand jury touching an alleged or supposed commission of crime.

Neither was the grand jury investigating a criminal charge made against these partic-

ular six defendants within the meaning of section 48 of the Code. Neither of these defendants was charged with the commission of a crime until after this investigation had ceased, and the indictment was filed in court. Then for the first time in a legal sense they were accused of the commission of a crime. Section 48 only applies to cases when a party has been duly charged with the commission of crime before a committing magistrate and held to answer. In such a case the grand jury are called upon to inquire whether the defendant in this criminal proceeding before the magistrate is prima facie guilty, as charged, and indorse the indictment accordingly. But in a general inquiry instituted by a grand jury for the purpose of ascertaining who committed a particular crime, or whether a crime was committed at all, it would be impossible to apply section 48, without stopping the inquiry at the threshold. The grand jury cannot know at once who will be the person put on trial for the crime, and who will be his co-defendants if any, and therefore cannot know if the testimony of either would be incompetent on the trial on that account, and for that reason not to be received by them on the investigation.

By the act of February 25, 1868 (15 Stat. 37), it is provided that no evidence of a party obtained in a judicial proceeding shall be used against such party in any court in the United States, in any criminal proceeding or proceeding to enforce a forfeiture or penalty. As the law stood before the passage of this act, a witness could decline to answer a question when the answer would tend to criminate himself. But now he may be compelled to answer, when inquiry is pertinent to any judicial proceeding, because it may be necessary to the ends of justice as to others, and cannot be used against himself. If this is not the object and effect of the act, I confess I do not know what is.

This being so, the grand jury might have interrogated each of these defendants concerning the part he took in this transaction, if any, but they were not authorized to find an indictment against either of them upon his own testimony. But either might be indicted upon the testimony of the other, and if any of them saw proper to volunteer a statement or confession of his own guilt to the grand jury, he might be indicted upon that. I see no reason why a party may not as well confess his crime before a grand jury, as before a court, as one of the defendants in this indictment has already done. But when a person is called before a grand jury as a witness, and it is subsequently sought to prove a confession, alleged to have been made by him whilst before such body, to sustain an indictment found against such person, I think it ought to be received with great caution, and rejected unless it satisfactorily appeared that it was deliberately and voluntarily made, and not inadvertently or from the supposed constraint of his position or the obligation of his oath. The national constitution (amendment 5), has wisely and humanely established beyond legislative control and popular caprice or necessity, the common law rule, that "no person shall be compelled, in any criminal case, to be a witness against himself."

Much was said upon the argument of this branch of the motion as to whether the sections of the Code above cited, touching the competency of witnesses in criminal actions are applicable to and govern in such actions in this court. The defense maintained the affirmative of the question and relied upon the act of July 6, 1862 (12 Stat. 588), which enacts that: "The laws of the state in which the court shall be held, shall be the rules of decision as to the competency of witnesses, in the courts of the United States in trials at common law, in equity and admiralty."

Prior to the passage of this act, the state law as to the competency of witnesses in the United States courts was the rule in "trials at common law" by virtue of section 34 of the judiciary act of 1798 (1 Stat. 92), but not in equity or admiralty. So far as I can perceive, this act is prospective, and was passed to produce uniformity in this respect in trials at common law, equity and admiralty. Practically it extends the judiciary act to cases in equity and admiralty. At first blush, it would seem that the phrase trials at common law was comprehensive enough, and intended to include the trial of criminal actions. But in U. S. v. Ried, 12 How. [53 U. S.] 362, Chief Justice Taney held that this phrase in the section of the judiciary act above cited, did not include criminal actions, but only "civil cases at common law as contradistinguished from suits in equity." While admitting the propriety and necessity of the rule of following the state law as to the competency of witnesses in civil actions, because it is in effect a rule of property, the chief justice said: "But it could not be supposed, without very plain words to show it, that congress intended to give to the states the power of prescribing the rules of evidence in trials for offenses against the United States. For this construction would in effect place the criminal jurisprudence of one sovereignty under the control of another."

Upon authority, I think the case conclusive that the act of July 6, 1862, does not apply to criminal actions. However, in my judgment, that consideration does not affect the question arising upon this motion, for I regard the Code in this respect as nothing more than an affirmance of the common law, and therefore the rule of this court. The motion to quash upon the first and second grounds, must be denied.

As to the other grounds of the motion, the objection should regularly have been taken by demurrer, but by consent the defendants have been permitted to make and argue

them in this way. On the argument, I was not much impressed with the force of the objections, but am not prepared now to say they are not well taken. Being pressed for time, I have not been able to give them the consideration I would like, I shall, therefore, deny the motion altogether, and if it becomes necessary, these objections to the sufficiency of the indictment, may be made in arrest of judgment.