## UNITED STATES *v.* SMITH.

*(Circuit Court, D. New Hampshire.* August 18, 1891.)

**1. CRIMINAL LAW—EVIDENCE—SELF-CRIMINATION—FORMER TESTIMONY—PROSECUTION AGAINST ANOTHER.**

Rev. St. U. S. § 860, providing that "no discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country shall be given in evidence or in any manner used against him, or his property or estate, in any court of the United States in any criminal proceeding," does not render it incompetent to contradict a party who testifies in his own behalf, by showing that, in a prosecution against another, he voluntarily appeared as a witness, and testified differently, where such testimony of itself has no tendency to criminate the witness, but rather to place the responsibility wholly upon the other. *U. S. v. McCarthy,* 18 Fed. Rep. 87, and *In re Counselman,* 44 Fed. Rep. 268, distinguished. *U. S. v. Brown,* 1 Sawy. 531, and *State v. Broughton,* 7 Ired. 96, followed.

**2. SAME—PROCEEDINGS BEFORE GRAND JURY.**

A defendant who testifies in his own behalf may be contradicted by showing that he testified differently before the grand jury as a witness against another, who was charged with the same offense.

At Law. Indictment of Horace N. Smith for forgery of a pension check. There was judgment of conviction, and respondent excepts. Exceptions overruled, and motion for new trial denied.

The respondent was tried under an indictment charging forgery and the utterance of a pension check, knowing that the indorsement on the back was false. On direct examination, one Davis, a witness called by the government, stated that he had had some acquaintance with the respondent's handwriting, by having seen him sign a note, and by having received a letter or two from him, one of which he had. Thereupon, and without objection, he was permitted to say that the name "A. D. Towne" on the back of the check may have been written by the respondent. This qualified opinion was given hesitatingly. On cross-examination, the respondent's counsel called for the letter, and proposed to call the attention of the witness to it, and cross-examine him in regard to it, by asking him to point out wherein it resembled the name of A. D. Towne on the back of the check. The district attorney objected. The court ruled that the letter might be presented to the witness, and that he might be cross-examined in reference to it, for the purpose of testing the worth of his opinion, but that it could not go to the jury for purposes of comparison. The letter was thereupon shown to the witness, and he was cross-examined in regard to it, and its resemblance to the signature of Towne on the check. The witness was halting and uncertain, and said there was a chance for doubt. The respondent's counsel then proposed to have witness call the attention of the jury to the letter, and the similarities and dissimilarities between it and the name of A. D. Towne on the check. The district attorney objected. There was no direct evidence that the letter was in Smith's hand, further than the fact that it was signed by him. The court ruled, subject to exception, that the witness could not be required to point out to the jury the manner in which the letter sustained his opinion by comparison, and that the letter could not go to the jury for that purpose.

Respondent took the stand in his own behalf, and testified generally as to matters set forth in the indictment. It appeared, without objection, that he had previously testified in reference to the same matters, at a preliminary hearing, and later before the grand jury by which he was indicted, as a witness against Towne, who was charged with the same crime. Although Smith was under recognizance to appear before the grand jury upon an investigation based upon a preliminary proceeding against Towne, in which the subject-matter of this prosecution was under investigation, he was in fact willing and anxious to give his testimony, with a view of fixing the responsibility upon Towne. So, in this sense, he gave his testimony voluntarily. At the trial he was asked on cross-examination, if he did not testify at the preliminary hearing, and before the grand jury, and if he did not then give an account of the transaction different from the one testified to at the trial, (the points of difference being stated,) and he answered without objection. Then, for the purpose of contradicting him, and disparaging his credibility as a witness, the district attorney called the clerk who took minutes before the grand jury, and offered to show that he did testify differently, in the respects inquired about, than he had testified on the stand. Respondent's counsel objected and excepted, generally, on the ground that the testimony would disclose the secrets of the grand jury room, and be a violation of the oath which he had taken as clerk. No statute or ground of objection was suggested other than the general objection.

The foregoing bill of exceptions is allowed.

*The District Attorney*, for the United States.

*John S. H. Frink*, for respondent.

ALDRICH, J., (*after stating the facts as above.*) It is not necessary, in this case, to decide whether the common-law rule, which excludes collateral writings from the jury, will be strictly adhered to, for the reason that I find, as a matter of fact, that the respondent's case was not prejudiced by the testimony of Davis, and the refusal to permit the comparison. The opinion of the witness was so qualified that it was of little value to the prosecution, and upon cross-examination it became more uncertain; and, in view of this uncertainty, the respondent's counsel offered to let the papers go to the jury, and the district attorney objected. I thought at the time, and think now, that the government's case was weakened, and the respondent's strengthened, by this affair.

The contradiction of the respondent by showing that he testified differently before the grand jury was of a character to prejudice his case, and it therefore becomes important to inquire whether this evidence was improperly admitted.

The first objection is based upon the fact that it involved statements made in a proceeding before a grand jury. I do not think the evidence was inadmissible for that reason. *U. S.* v. *Farrington*, 5 Fed. Rep. 343; *U. S.* v. *Kilpatrick*, 16 Fed. Rep. 765.

The second objection is grounded upon section 860 of the Revised Statutes of the United States, which statute, it is conceded, was not

in the mind of either court or counsel at the time of the trial, and was first suggested as a specific ground of exception in argument after verdict. Although it may be doubtful, under the authorities, whether the objection taken at the trial was sufficiently specific to save to the respondent the objection now taken on the ground of the statute, I am inclined, for the purposes of this case, to treat the question as fairly and fully raised. The question presented, therefore, is this: Should the statute in question be so construed as to make it incompetent to contradict a party, who testifies in his own behalf, by showing that on another occasion, in a prosecution against another party, he, as a witness, gave a different account of the transaction, such account of itself having no tendency to criminate the witness, but rather to place the responsibility wholly upon another? The statute provides that—

"No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence or in any manner used against him, or his property or estate, in any court of the United States in any criminal proceeding."

An examination of the history of this statute satisfies me that congress only intended to do away with the liability of criminal prosecution, and thereby remove the privilege of refusing to testify in situations where under the common law, the privilege exists, to the end that justice may be promoted by compelling a witness to testify to affirmative matter in a prosecution against others, although the evidence sought may tend to criminate the witness as well. In other words, the object was to remove the personal privilege, so that evidence against others might be compulsorily obtained. In a case where the evidence was obtained through the compulsion of judicial proceeding, and tended to criminate the witness, the statute would undoubtedly furnish absolute immunity from any use of such evidence to sustain a prosecution against the witness. But such is not the situation presented. At the time the respondent gave the evidence which was used in contradiction, one Towne was under prosecution for forging the indorsements on the check in question, and Smith willingly gave evidence as to the condition of the check when he first saw it; his account of the transaction in no way tending to criminate, but, on the contrary, to wholly exculpate, himself, and fasten the responsibility of the wrong upon Towne. Smith was subsequently indicted for the same offense, and, upon the trial, gave a different account of the condition of the check; and, for the purpose of impairing his credibility as a witness, the government was permitted to show that he had made inconsistent and contradictory exculpatory statements. This statute was not designed to protect a party from the consequence of making inconsistent statements for the purpose of wrongfully fixing crime upon another, and thereby shielding himself, but, rather, to protect from prosecutions based upon affirmative evidence as to transactions which involve the witness with others in questionable proceedings. It is against such evidence obtained in judicial proceedings that the statute affords protection; and, to render the statute operative as a protection

against the consequences of contradiction, the evidence previously given must have been self-criminating, and obtained through the power of compulsion. So it follows that a witness who willingly gives evidence which does not in itself tend to self-crimination, but to fix the crime upon another, will not, upon subsequent proceedings in which he is a party, be exempt from the common-law rules as to contradictions and other methods of testing the credibility of witnesses and parties.

It often happens that justice is promoted by showing that a witness or a party has made inconsistent and contradictory statements, charging guilt upon others. If this case were to be tried again, and the respondent should give evidence different from the exculpatory evidence voluntarily given in his own behalf upon the last trial, it would at least be anomalous if such inconsistency could not be shown upon the question of credit. Or suppose, A. being on trial, John should testify that he saw B. commit the crime, and upon a second trial of the same case he should say that it was C., could it not be shown that the witness had made inconsistent and contradictory statements, to the end that the value of his testimony should be known? A construction of the statute in question which would shield a witness or a party from the consequences of such tests would at once destroy common and well-understood rules of evidence, long ago established for the better administration of justice. None of the cases cited by counsel are quite in point; yet it may be observed that *U. S.* v. *McCarthy*, 18 Fed. Rep. 87, and *In re Counselman*, 44 Fed. Rep. 268, on which counsel for the respondent chiefly rely, involve the self-criminating and compulsory elements, while *U. S.* v. *Brown*, 1 Sawy. 531, 536, and *State* v. *Broughton*, 7 Ired. 96, in reasoning, sustain the view which is here taken. If I am wrong in the construction placed upon the statute, the respondent has a speedy remedy by writ of error. The exceptions are overruled, and the motion for a new trial is denied.