**UNITED STATES v. LEHIGH VALLEY R. CO. et al.**

No. 5901.

District Court, M. D. Pennsylvania.
Aug. 19, 1930.

Andrew B. Dunsmore, U. S. Atty., of Wellsboro, Pa., and William J. Walsh, Sp. Asst. to U. S. Atty., of Washington, D. C.

Knapp, O'Malley, Hill & Harris, of Scranton, Pa., and John T. Brady, of Harrisburg, Pa., for defendants.

WATSON, District Judge.

The defendants were indicted on October 29, 1929, for a violation of the Elkins Act (U. S. Code, title 49, § 41 [49 USCA § 41]). They have filed pleadings attacking the validity of the indictment. Each defendant has filed a plea in abatement the legal sufficiency of which the government attacks by demurrers. Each defendant has also filed a motion to quash, and in each case a rule was granted to show cause why the indictment should not be quashed. Both proceedings have been adopted by counsel for defendants in order to avoid a possible denial of their claims upon purely technical grounds. Ordinarily, motions to quash indictments are based upon matters suggested by the record; whereas, pleas in abatement are founded upon allegations of fact dehors the record. U. S. v. Goldman (D. C.) 28 F.(2d) 424, 432. The pleas in abatement in each instance contain the following allegations:

"1. That the only witnesses appearing before the Grand Jury in the above stated case were E. W. Stewart and C. M. Young, employees of the Interstate Commerce Commission; that the said witnesses could have no personal knowledge of the acts set forth in the said indictment and the facts necessary to justify such an indictment; that their testimony would be merely hearsay and incompetent; and that there could have been no competent testimony before the Grand Jury to warrant or justify the said indictment."

"2. That witnesses were subpoenaed, with records, but were not permitted to go before the said Grand Jury, their records being taken by the said E. W. Stewart, and were used by him before the said Grand Jury, without proper proof of the said records."

"3. That in taking possession of the books and records of the Defendants and other witnesses and presenting them to the said Grand Jury, the said witnesses overstepped the bounds of permissible activities of a witness, and the indictment based upon such testimony is null and void and of no force or effect."

"4. The essence of the offense attempted to be denounced in the indictment in this case was the transportation of property over the through routes mentioned in the indictment, and in every count thereof, and through this district. No competent evidence of such transportation was presented before the said Grand Jury, either in the form of oral testimony or documentary evidence."

"5. (5, in plea filed by Reading Company and in plea filed by Joseph A. Fisher; 6, in plea filed by the Lehigh Valley Railroad Company). That the evidence presented before the said Grand Jury, even if the same had been presented by competent witnesses, was competent only to disclose a violation, not of the Elkins Act, title 49, section 41, United States Code (49 USCA § 41), but a violation of Section 10 of title 49, being false billing or classification, of which offense this Court would have no jurisdiction, as the indictment upon its face shows the billing to have been done in the City of Philadelphia, in the Eastern District of Pennsylvania."

The plea in abatement filed by the Lehigh Valley Railroad Company contains, in addition to the above quoted, the following allegation:

"6. That the evidence presented before the said Grand Jury, even if the same had been presented by competent witnesses, was competent to disclose only a violation, not of the Elkins Act, title 49, Section 41, United States Code (49 USCA § 41), but a violation of section 10, of title 49, being false billing or classification, of which offense this Court would have no jurisdiction, as the indictment upon its face shows the billing to have been done in the City of Philadelphia, in the Eastern District of Pennsylvania."

As to paragraph 1 of the pleas in abatement, there is the allegation that Stewart and Young were employees of the Interstate Commerce Commission, but that is as far as it goes. There is nothing said as to whether or not Stewart and Young were employees of the railroad company, nor is any reason given why they could not have knowledge of the facts in connection with the offenses. The fact that they were employed by the Interstate Commerce Commission is no reason at all. Here the pleas lack the certainty which is required in pleas in abatement, and the court will not supply the omissions.

At this point I shall refer to some of the general principles which are applicable to pleas in abatement in criminal cases and which may be applied to the pleas filed in this case.

" 'The certainty required of pleas in abatement is extreme. In the language of the old books, they must be certain "to a certain intent in every particular." They must leave, "on the one hand, nothing to be supplied by intendment or construction; and, on the other, no supposable special answer unobviated." ' State v. Duggan, 15 R. I. 413, 6 A. 597. ' * * * Matters of form in them are regarded as matters of substance. They are construed most strongly against the pleader, and cannot be sustained unless they negative the existence of every fact, and repel every inference, however slight, crossing the matter relied on in the plea. Powers v. State, 4 Ala. 531; State v. Brooks, 9 Ala. 9; Roberts v. Heim, 27 Ala. 678.' " United States v. Janes (D. C.) 74 F. 543, 544.

"It is well settled that pleas in abatement are not favored in law, that they are to be strictly construed, and that the courts will not supply omissions therefrom." Hillman v. United States (C. C. A.) 192 F. 264, 267.

"For the purpose of considering the demurrer, the plea must be taken as true. Pleas in abatement are not favored in law, and are construed with great strictness. The courts will not supply omitted material averments,

nor cure defective ones by inference. Any inference indulged in by the court must be against the pleader. It is his duty to set forth in his plea in clear, definite, and positive language the facts relied upon. All the authorities agree that great strictness and accuracy are required in pleas in abatement, and 'no latitude in practice is extended to them.' Epperson v. State, 5 Lea (Tenn.) 291; Baker v. Compton, 2 Head (Tenn.) 471; State v. Bryant, 10 Yerg. (Tenn.) 527." United States v. Standard Oil Co. of Indiana (D. C.) 154 F. 728, 733.

"This is important in view of the rules applicable to such pleas, one of which strictly exacts the most explicit averments, and another of which requires the plea to be presented with the greatest promptness—general rules which are applied not merely to objections to the formation of a grand jury, but to all those matters of abatement which, in the technical sense, are dilatory, and which even if sustained do not finally dispose of the subject-matter of the indictment. * * * "Pleas in abatement, being designed to avoid a trial on the merits, are not only strictly construed but are not often favored by the courts, as this plea would be if it had come up to the rules we have noticed. We are therefore constrained to hold that the plea is not sufficient, and that the demurrer thereto should be sustained." United States v. American Tobacco Co. (D. C.) 177 F. 774, 777.

"While it is the rule in many jurisdictions that the court will not inquire into the sufficiency of the evidence before the grand jury, the decisions of the Supreme Court and those of most of the inferior federal courts have been to the effect that an indictment cannot be abated, on account of the admission of incompetent or hearsay testimony, unless it affirmatively appear in the plea that no competent evidence of the commission of the offense charged therein was presented to the grand jury, or unless all of the evidence was unlawfully procured in violation of substantial rights of the accused, so as to subject it to exclusion if offered against him. Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138; Chadwick v. United States (C. C. A.) 141 F. 225; United States v. Standard Oil Co. (D. C.) 154 F. 728; Hillman v. United States (C. C. A.) 192 F. 264; McKinney v. United States (C. C. A.) 199 F. 25; Anderson v. United States (C. C. A.) 273 F. 20; United States v. Morse (D. C.) 292 F. 273; United States v. Silverthorne (D. C.) 265 F. 859. And it is uniformly held that a plea in abatement to an in-

dictment, being a dilatory plea and not favored in law, must be pleaded with strict exactness and with certainty, accuracy, and completeness, and must set forth facts, and not conclusions of law, nor evidence of facts, and that every inference must be against the pleader.

"The pleas here fall short of compliance with the rule. The defendants could have had no personal knowledge of the evidence submitted to the grand jury. The verification of each states that the contents of his plea are true 'as he verily believes.' It has been held —properly, we think—that a plea of abatement to an indictment on information and belief is insufficient, United States v. Bopp (D. C.) 232 F. 177; United States v. Morse (D. C.) 292 F. 273, 278." Olmstead v. United States (C. C. A.) 19 F.(2d) 842, 845, 53 A. L. R. 1472.

"Another general rule is that, for such irregularities as do not prejudice the defendant, he has no cause of complaint, and can take no exception. United States v. Richardson [C. C.] 28 F. 61; United States v. Reed, 2 Blatchford, 435, 456, Fed. Cas. No. 16,134; United States v. Tallman, 10 Blatchford, 21, Fed. Cas. No. 16,429; State v. Mellor, 13 R. I. 666; Cox v. People, 80 N. Y. 500; People v. Petrea, 92 N. Y. 128; * * * and, moreover, the plea is fatally defective in that, although it is stated that the drawing 'tended to his injury and prejudice,' no grounds whatever are assigned for such a conclusion, nor does the record exhibit any such." Agnew v. United States, 165 U. S. 36, 17 S. Ct. 235, 238, 41 L. Ed. 624.

■ It will be observed that the courts generally have held, with respect to pleas in abatement to indictments, that they must be pleaded with exactness, certainty, accuracy, and completeness, and must set forth facts and not evidence of facts or conclusions of law, and that every inference must be against the pleader.

■ Paragraph 2 of the plea in abatement is clearly insufficient. There is no allegation that there was no other competent evidence to warrant the finding of an indictment. U. S. v. Philadelphia & Reading Railroad Co. (D. C.) 225 F. 301. It is not alleged how the use of, or that the use of the records prejudiced the defendants. The court will not supply omissions from the plea. Hillman v. U. S., supra.

■ In paragraph 3 of the pleas, the defendants state that an indictment based upon such testimony is null and void and of no force or effect. It is not alleged, however, that the indictment was based solely upon such testimony, or that such testimony was even considered by the grand jury. It is not alleged that such testimony in any way prejudiced the defendants. The plea is silent on each of these matters. Irregularities by witnesses, unless clearly to the prejudice of the defendant, are not a cause for quashing the indictment. U. S. v. American Tobacco Co., supra.

■ Paragraph 4 of the pleas in abatement is urged with much confidence by counsel for the defendants. It is alleged that transportation was the essence of the offenses charged, and that there was no competent evidence of such transportation presented before the grand jury.

I am not unmindful of that which was held in the Goldman Case and the Olmstead Case. In the Goldman Case, it was alleged on behalf of certain defendants that "the grand jury that found * * * the indictment * * * had not before it any evidence whatever that was competent or admissible.". The demurrer admitted the fact. The plea in abatement was sustained. In the Olmstead Case, it was held that the court will not inquire into the sufficiency of the evidence before the grand jury unless it affirmatively appear in the plea that no competent evidence of the commission of the offenses charged therein was presented to the grand jury. In the present case, there is no allegation that the grand jury had not before it any evidence whatever that was competent or admissible, nor is there any allegation that no competent evidence of the commission of the offenses charged therein was presented before the grand jury. It is alleged in the present case that there was no competent evidence of transportation. The offense charged is that the Reading Company and the Lehigh Valley Railroad Company did unlawfully grant and give concessions in respect to transportation of property. There is no allegation in the plea in abatement that there was no competent evidence of granting or giving of concessions.

There is in the Elkins Act (49 USCA § 41) the following language: "And it shall be unlawful for any person, persons, or corporation to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier subject to said chapter whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs pub-

lished and filed by such carrier, as is required by said chapter, or whereby any other advantage is given or discrimination is practiced."

An offer of a concession in respect to interstate transportation, even though accepted by the shipper, nevertheless, the carrier might be guilty of the offense charged; that is, of the offer of a concession.

In U. S. v. P. Koenig Coal Co., 270 U. S. 512, 46 S. Ct. 392, 394, 70 L. Ed. 709, Mr. Chief Justice Taft, in delivering the opinion of the court, said: "We have often declared that the purpose of Congress in the Elkins Law was to cut up by the roots every form of discrimination, favoritism and inequality. Louisville & Nashville R. R. Co. v. Mottley, 219 U. S. 467, 478, 31 S. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; New York, New Haven R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 391, 26 S. Ct. 272, 50 L. Ed. 515; Armour Packing Co. v. United States, 209 U. S. 56, 72, 28 S. Ct. 428, 52 L. Ed. 681; United States v. Union Stock Yards, 226 U. S. 286, 309, 33 S. Ct. 83, 57 L. Ed. 226. It would be contrary, therefore, to the general intent of the law to restrain the effect of the language used so as not to include acts exactly described when they clearly effect discrimination and inequality. Certainly no one would say that a shipper might not be convicted under the act of soliciting an unlawful concession or advantage or discrimination, even though the carrier refused to extend it to him. So, too, if a carrier offers an unlawful advantage to a shipper who declines it, clearly the carrier may be indicted and punished."

It is supposable that the offer of a concession was made within the Middle District of Pennsylvania, and such is not negatived by the defendants in the plea.

In paragraph 5 of the plea in abatement filed by the Reading Company, and in paragraph 5 of the plea in abatement filed by Joseph A. Fisher, it is alleged that the evidence before the grand jury was competent only to disclose a violation of section 10 of title 49, false billing or classification. There is no averment of what the evidence was, or as to how it bears out the contention of the plea. It does not necessarily follow that because there was a violation of section 10 of title 49, that there was no violation of the Elkins Act, title 49, section 41. The Elkins Act broadened section 10 of the Interstate Commerce Act (49 USCA § 10), which prohibited only fraudulent devices. Section 1

of the act (Elkins [49 USCA § 41]) prohibits all devices.

"The act [Elkins] seeks to reach all means and methods by which the unlawful preference of rebate, concession, or discrimination is offered, granted, given, or received." Armour Packing Co. v. U. S., 209 U. S. 56, 28 S. Ct. 428, 431, 52 L. Ed. 681. The plea in this paragraph lacks exactness, certainty, accuracy, and completeness, and fails to meet the strict requirements as laid down in the cases to which I have referred.

Paragraph 5 of the plea in abatement filed by the Lehigh Valley Railroad Company states that there could have been no competent evidence presented to the grand jury which would justify the indictment against this defendant. This is a conclusion which is not supported by fact. It is stated in the plea that under the law the defendant was required to receive traffic sealed, and to deliver it to its connecting line sealed, but does not aver that the law was complied with in this respect. The contents of a car might be determined from competent evidence which was presented to the grand jury. There is no averment that such competent evidence was not presented to the grand jury. The plea in this paragraph fails to meet the requirements of a plea in abatement.

It is contended by the government that the plea in each case is bad, for the reason that the plea is based on information and belief only, and it is not positively stated by the defendant to be true in substance and in fact. The concluding paragraph of each plea contains the following statement: "Defendant says that the matters herein set out are true as he verily believes and alleges."

The affidavit supporting each plea is in the following language: "———— being duly sworn, according to law, deposes and says that he is one of the defendants above named, and that the facts set forth in the foregoing plea in abatement are true and correct to the best of his information and belief, and he verily believes them to be true; and further that the said plea in abatement is not interposed for the purpose of delay, but because it raises legal questions necessary to be passed upon in order that the rights of this defendant may be properly protected."

Neither the pleas nor the affidavit set out the grounds of the information or belief, and the court is without knowledge as to how the defendants acquired their belief. The fourth paragraph in the pleas is weakened by the affidavits and amounts to nothing more than a statement by the defendants that they are

informed that no competent evidence of such transportation was presented before the said grand jury. If this were enough, in many cases the defendant would object to being tried on the indictment and would support his objection by his affidavit that he believed the grand jury acted upon in competent evidence, or that he believed that there was no competent evidence presented before the grand jury. We would then be obliged to try out the proceedings before the grand jury in most cases. If it developed that there was competent evidence, the defendant would have the government's case in advance, and the door would be open to abuse and an intolerable practice. No case has been cited which holds that a plea in abatement on information and belief is sufficient. The reasons which have caused the courts to hold that a plea in abatement based upon information and belief is not sufficient are set forth in a number of cases. U. S. v. Morse et al. (D. C.) 292 F. 273; U. S. v. Brown, 24 Fed. Cas. 1273, No. 14,671; U. S. v. Nevin et al. (D. C.) 199 F. 831; Olmstead v. U. S. supra.

In Kastel v. United States, 23 F.(2d) 156, 157, L. Hand, Circuit Judge in the United States Circuit Court of Appeals, Second Circuit, said: "The second point arises upon the denial of a motion to quash the indictment because the grand jury had no competent evidence before it upon which to indict. This motion was supported by an affidavit of the defendant, alleging on information and belief that one Keyes Winter, the receiver in bankruptcy of the defendant, was the only witness sworn by the grand jury, and that it was impossible that he should have given competent proof of the facts. * * * The only evidence to support the motion to quash was the defendant's affidavit on information and belief that the grand jury had no competent evidence upon which to indict him. If this were enough, we should be obliged to try over the proceedings before the grand jury in every case. If it turned out that there was competent evidence, the accused would none the less have the prosecution's case in advance to contrive against at his leisure. In any event the trial would be complicated to an inordinate extent, and our criminal procedure become even more unwieldy, dilatory, and uncertain. We agree with the rulings in the Eighth Circuit, never insensitive to the protection of personal rights. McKinney v. U. S. [C. C. A.] 199 F. 25; Murdick v. U. S. [C. C. A.] 15 F. (2d) 965. See also, U. S. v. Morse (D. C.)

292 F. 273, 278; U. S. v. Reed, Fed. Cas. No. 16,134; U. S. v. Cobban (C. C.) 127 F. 713."

The demurrers to the pleas in each case will be sustained.

In the motion to quash filed by each defendant, paragraphs 1 to 6 are identical and are as follows:

"1. The indictment sets forth no offense under the laws of the United States."

"2. The indictment violates the Sixth Amendment to the Constitution, in that it does not inform the defendant of the nature and cause of the accusation, as required by law."

"3. The indictment is vague, evasive and indefinite."

"4. The indictment does not charge an offense with the particularity required by law."

"5. The indictment does not charge a crime with the precision and certainty, and does not accurately and clearly allege every ingredient of which it is composed, as required by law."

"6. The indictment does not distinctly state the facts claimed to constitute the criminal breach so as to fairly advise the accused of the charge to be met, and afford him fair opportunity to prepare his defense."

The reasons set forth in paragraphs 1 to 6 question the sufficiency of the indictment as do the reasons set forth in paragraphs 13 and 14 of the motion to quash filed by Joseph A. Fisher, which paragraphs read as follows:

"13. As to this defendant, the said indictment, and every count thereof, is void and invalid for the reason that it contains only legal conclusions of the pleader and does not set forth the facts which it is alleged constitute the offense."

"14. As to this defendant, the said indictment, and every count thereof, is void and invalid for the reason that no facts are pleaded with sufficient definiteness and certainty to identify the offense and to enable this defendant properly to prepare for trial and to secure protection against double jeopardy."

In order to do substantial justice to all concerned, the courts are not inclined to seriously consider technical objections to indictments. A more liberal view has been adopted, and refinement and technicality must yield to substantial things. Reasonable implications from facts clearly charged may be indulged in in ascertaining the true meaning of an indictment. In Ex parte Pierce (C. C.) 155 F. 663, 665, Judge Adams said:

"The criterion for judging the sufficiency of indictments is whether the words employed make the charge clear to the 'common understanding.' Dunbar v. U. S., 156 U. S. 185, 15 S. Ct. 325, 39 L. Ed. 390. 'The object of criminal proceedings is to convict the guilty, as well as to shield the innocent, and no impracticable standards of particularity should be set up whereby the government may be entrapped into making allegations which it would be impossible to prove.' Evans v. United States, 153 U. S. 584, 591, 14 S. Ct. 934, 937, 38 L. Ed. 830. 'Few indictments * * * are so skillfully drawn as to be beyond the hypercriticism of astute counsel, few which might not be made more definite by additional allegations; but the true test is not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran v. United States, 157 U. S. 286, 290, 15 S. Ct. 628, 630, 39 L. Ed. 704. Reasonable implications from facts clearly charged may be indulged in ascertaining the true meaning of an indictment. Rosen v. United States, 161 U. S. 30, 33, 16 S. Ct. 434, 40 L. Ed. 606; Clement v. United States, 79 C. C. A. 243, 149 F. 305. Such are the more recent expressions of the Supreme Court of the United States on this question. They amount to this: That while every precaution must be taken to fairly and fully apprise the accused of the nature and cause of the accusation against him, so as to enable him to make his defense and plead the judgment which may be rendered in the case for his protection against another charge for the same offense, and thereby protect him to the full in his constitutional right to a fair and impartial trial, no impracticable or useless standards of technicality or refinement, which tend to defeat justice or embarrass its administration, should be adopted."

The question of the sufficiency of indictments under the Elkins Act has been decided by the courts in a number of cases, and in some cases a statement of that which an indictment should contain is clearly set forth.

In Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. United States (C. C. A.) 162 F. 835, 838, a case in which the railway company was indicted for granting rebates, the court said: "The test of a good indictment, as frequently declared by this court and by the Supreme Court, is whether all the essential elements of the offense are stated with sufficient clearness and certainty to inform the court of the facts charged, so that it may decide as to their sufficiency in law to support a conviction, to enable the accused to understand the nature of the accusation against him, to intelligently prepare to meet it, and to plead the judgment rendered thereon, whether of conviction or acquittal, as his protection against another prosecution for the same offense. * * * The substantial elements of the offense are few. There must be (1) the granting or giving of a rebate (2) from the published and filed rates (3) for the transportation of property (4) by a carrier engaged in interstate commerce. The indictment in our opinion contains all these elements, and they are specified with all the detail and certainty required by the rule just referred to. There is no particular description of the device resorted to by the defendants to accomplish the unlawful transportation, but this is not necessary. Armour Packing Co. v. United States, 153 F. 1, 82 C. C. A. 135 [14 L. R. A. (N. S.) 400]. There are found in the indictment clear and definite allegations showing the kind of property shipped, the time and place when shipped, the consignee to whom shipped, the existing legal tariff or rate for such shipment, the payment thereof by the shipper to the carrier, the subsequent payment of the rebate or concession by the carrier to the shipper, the time when it was paid, and the amount thereof. These details afforded all the required certainty and the indictment was clearly sufficient. Thomas v. United States, 156 F. 897, 84 C. C. A. 477 [17 L. R. A. (N. S.) 720]."

In Armour Packing Co. v. United States (C. C. A.) 153 F. 1, on page 17, 14 L. R. A. (N. S.) 400, the court said: "The indictment in this case pleads the names of the carriers that transported the property, the date and place of the delivery of the goods to the initial carrier and of the receipt of the concession by the shipper, a description of the specific articles shipped, the filed and published rate, the less rate at which the goods were transported, and the amount of the concession, the place of shipment, and the point of destination of the property, and the route over which it was transported. Here were averments of facts sufficient to clearly advise the defendant of the offense with which it was charged, to give it ample opportunity to prepare its defense, to enable it to avail itself of a conviction or an acquittal in the case of another prosecution for the same crime, and to qualify the court to determine

whether the facts stated constituted an offense."

 In the present case, the indictment shows: (1) That the Reading Company, the Susquehanna & New York Railway Company, the Lehigh Valley Railroad Company, the Canadian National Railway Company, and the Grand Trunk Railway System transported the property. (2) That on March 7, 1928, at Philadelphia, Pa., the goods were delivered for transportation, and that on March 13, 1928, at Grand Rapids, the shipper received the concessions. (3) That the articles shipped were 1,000 bags of "whiting" of an aggregate weight of 111,400 pounds, loaded in a car bearing the initials and number "Rdg. 100,546." (4) That the filed and published rate for whiting was 33 cents for 100 pounds. (5) That the goods were transported at the rate of 26 cents per 100 pounds; that the amount of the concession was $77.98; that the place of shipment was Philadelphia 5. (6) That the point of destination was Grand Rapids, Mich.; that the route over which the property was transported was from Philadelphia, Pa., to Grand Rapids, Mich., over the railway lines of the Susquehanna & New York Railroad Company, the Lehigh Valley Railroad Company, the Canadian National Railway Company, and the Grand Trunk Railway System. I am of opinion that the indictment in this case meets the test and that the indictment should not be quashed for the reasons set forth in the paragraphs referred to.

In the motions to quash by the Reading Company and by Joseph A. Fisher, paragraphs 7 to 10 are identical and are as follows:

"7. No competent testimony was submitted to the Grand Jury to justify the said indictment."

"8. The said indictment is illegal and void for the reason that the same was obtained by reason of improper acts upon the part of the persons who appeared on behalf of the Government before the Grand Jury."

"9. The indictment in this case is illegal and void for the reason that the essence of the offense attempted to be denounced therein was the transportation of property over the through routes mentioned in the indictment, and in every count thereof, and through this district, and no competent evidence of such transportation was presented before the said Grand Jury, either in the form of oral testimony or documentary evidence."

"10. The indictment in this case is illegal and void for the reason that the evidence presented before the Grand Jury, even if the same had been presented by competent witnesses, was competent to disclose only a violation, not of the Elkins Act, title 49, section 41, United States Code (49 USCA § 41), but a violation of section 10 of title 49, being false billing or classification, of which offense this court would have no jurisdiction, as the indictment upon its face shows the billing to have been done in the City of Philadelphia, in the Eastern District of Pennsylvania."

In the motion to quash by the Lehigh Valley Railroad Company, paragraphs 7, 8, 9, and 11 are identical with paragraphs 7, 8, 9, and 10 above quoted. Paragraph 10, in the motion to quash by the Lehigh Valley Railroad Company, reads as follows:

"10. The indictment in this case is illegal and void for the reason that it attempts to charge this defendant, as an intermediate carrier of carload freight traffic, with an offense under the Elkins Act, and under the law this defendant being required to receive any such traffic sealed and to deliver it to connecting lines sealed, there could have been no competent evidence presented to the Grand Jury which would justify the said indictment against this defendant."

These paragraphs question the regularity in the proceedings before the grand jury. The same questions were raised by the pleas in abatement and have already been discussed herein and disposed of by me. The indictment should not be quashed on the reasons set forth in the paragraphs referred to.

Paragraph 11, in the motion to quash by Joseph A. Fisher, reads as follows:

"11. As to the said Joseph A. Fisher, the indictment, and every count thereof, is invalid for the reason that the same attempts to charge a felony and does not charge this defendant with felonious intent."

 It is well settled that the indictment is not defective for failure to charge the defendant with felonious intent. Bannon & Mulkey v. United States, 156 U. S. 464, 15 S. Ct. 467, 39 L. Ed. 494.

As to defendant Joseph A. Fisher the indictment reads as follows:

"And the Grand Jurors aforesaid upon their oath aforesaid do further present that one Joseph A. Fisher, an officer and agent, to wit, foreign freight agent of said Reading Company, well knowing the premises aforesaid, then and there unlawfully did knowingly aid and abet said Reading Company the said offense in manner and form aforesaid to

144

do and commit; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

Paragraphs 12, 16, and 17 in the motion to quash by Joseph A. Fisher read as follows:

"12. The indictment, and every count thereof, as to this defendant, is void for the reason that it attempts to charge a felony as to this defendant and a misdemeanor as to co-defendants."

"16. As to this defendant, the said indictment, and every count thereof, is void for the reason that it attempts to charge this defendant as an aider and abetter, and an aider and abetter can act only at the time when and the place where the principal committed the offense, and no such facts are set forth in the indictment, or any count thereof."

"17. This indictment, and every count thereof, as to this defendant, is void and invalid for the reason that any connection with or participation in any manner by any person in the offense sought to be denounced in this indictment is made a specific offense by the Act of Congress, and, therefore, a person who is made a principal by the Act of Congress cannot be charged as an aider and abetter."

The offense with which Fisher is charged is punishable by a fine and imprisonment not exceeding two years, and for that reason is deemed a felony.

The offense with which the codefendants are charged is a misdemeanor, expressly made so by the act.

[15] We have, therefore, in the indictment a misdemeanor and a felony combined. This in itself might not be so serious if it were not for the law providing for the number of challenges allowed when the offense charged is a felony, and the number of challenges when the offense charged is a misdemeanor.

Section 287 of the Judicial Code (28 US CA § 424) reads as follows:

"When the offense charged is treason or a capital offense, the defendant shall be entitled to twenty and the United States to six peremptory challenges. On the trial of any other felony, the defendant shall be entitled to ten and the United States to six peremptory challenges; and in all other cases, civil and criminal, each party shall be entitled to three peremptory challenges; and in all cases where there are several defendants or several plaintiffs, the parties on each side shall be deemed a single party for the purposes of all challenges under this section. All challenges, whether to the array or panel, or to individual jurors for cause or favor, shall be tried by the court without the aid of triers."

Under the provisions of this section, the defendant Fisher would be entitled to ten peremptory challenges and the United States would be entitled to three peremptory challenges. This section also provides that the defendants shall be deemed a single party for the purposes of all challenges.

A serious question might here arise if it were not for the opportunity of a severance, the application for which may be made by the defendant or the prosecution, and in this way a separate trial of Fisher directed by the court, or the government might consent to the trial of all of the defendants as if felony were the charge in each case and allowed ten peremptory challenges. This could not possibly be objected to by the defendants. The reasons set forth in paragraph 12 in the motion to quash by Joseph A. Fisher are not sufficient to justify the court in quashing the indictment.

In paragraph 16 of the motion to quash by Joseph A. Fisher, the defendant contends that there are set forth in the indictment no facts as to the time when and the place where the principal committed the offense. Under the Elkins Act, the principal was committing the offense in the district through which the transportation was conducted at the time when it was conducted. The facts as to the time when and the place where the principal committed the offense are set up in the indictment.

In paragraph 17 in the motion to quash by Joseph A. Fisher, defendant contends that he, having been made a principal by the act of Congress, cannot be charged as an aider and abettor. One who aids and abets may be charged either as a principal or as an aider and abettor, since by statute aiders and abettors are made principals. 18 US CA § 550. Alleging that defendant aided and abetted does not negative participation as a principal. Westfall v. United States (C. C. A.) 20 F.(2d) 604. The reason set forth in paragraph 17 is not sufficient to justify the quashing of the indictment.

The remaining reasons advanced by Joseph A. Fisher on his motion to quash are found in paragraph 15 and 18, and are as follows:

"15. As to this defendant, the said indictment, and every count thereof, is void for the reason that as to this defendant no facts

are set forth showing jurisdiction in this Court."

"18. As to this defendant, the said indictment, and every count thereof, is invalid for the reason that the jurisdictional clause of the Elkins Act, title 49, section 41, United States Code, as to an individual, is unconstitutional and violates article 3, section 2, of the Constitution of the United States and the Sixth Amendment to the Constitution of the United States."

The Supreme Court has pointed out how the violation of the Elkins Act is a continuing crime committed equally and at all times during the transportation, whether at the beginning, at the end, or in the middle of the journey. Armour Packing Co. v. United States, 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed. 681. The Supreme Court has, in the Armour Case, settled all doubt as to the constitutionality of the jurisdictional clause of the Elkins Act. The Reading Company is charged with the commission of the offense in the Middle District of Pennsylvania. It is charged in the indictment that Joseph A. Fisher "then and there unlawfully did knowingly aid and abet said Reading Company the said offense in manner and form aforesaid to do and commit." This is sufficient to bring Fisher within all the allegations made with reference to the Reading Company as far as time and place of the offense are concerned. Hale v. United States (C. C. A.) 25 F.(2d) 430; Coffin v. United States, 156 U. S. 432, 15 S. Ct. 394, 39 L. Ed. 481.

The reasons set forth in paragraphs 15 and 18 of the motion to quash by Joseph A. Fisher are not sufficient to justify the court in quashing the indictment.

In arriving at my conclusions, I have carefully considered the briefs presented and the able arguments of counsel for both sides. The indictment might have been made more definite by additional allegations, and there might have been more than one indictment. Nevertheless, the indictment does meet the true test to be applied to an indictment, as stated in Ex parte Pierce (C. C.) 155 F. 663, and cases there cited.

The demurrers to the pleas in abatement should be sustained, the motions to quash should be dismissed, and the rules to show cause why the indictments should not be quashed should be discharged.

Now, August 19, 1930, the demurrers to the pleas in abatement filed by the government in this case are sustained, the motions filed by the defendants to quash the indictments are dismissed, and the rules to show cause why the indictments should not be quashed are discharged.